Arthur E. Nelson, Plaintiff in Error, v. David M. Zemans et al., Defendants in Error.

Gen. No. 37,316.

Opinion filed June 15, 1934.

PETIT, OLIN & OVERMYER, for plaintiff in error; ROY E. OLIN, FRANKLIN R. OVERMYER and ADELOR J. PETIT, JR., of counsel.

SABATH, PERLMAN, GOODMAN & REIN, for defendants in error.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

By this writ, Nelson, complainant in a proceeding to foreclose a trust deed given to secure the purchase price of the premises described, seeks to reverse an order of the circuit court by which he was denied a judgment against certain defendants for a deficiency which existed after sale. The facts are not in controversy.

The bill of complaint was filed April 6, 1932. It alleged that on December 3, 1925, defendant David M. Zemans executed two notes for $10,000 and $40,000, due in one and two years after date respectively, with interest at six per cent, representing which he executed coupons; that to secure the payment of the indebtedness represented by these notes, Zemans on the same date executed and delivered a trust deed conveying the premises described to the Chicago Title & Trust Company as trustee.

The notes were given for the balance of the purchase price, Zemans taking title thereto from a member of the Nelson family. The $10,000 note and the coupons have been paid and canceled. February 27, 1928, $7,500 was paid upon the principal of the $40,000 note and Nels Nelson, then the owner, made an extension agreement in writing with Zemans, whereby the balance of $32,500 was extended for two years from that date, with interest at six per cent. Thereafter the interest of April 1, 1930, was paid, and on the same date a further payment of $3,500 was made on the principal, leaving a balance due of $29,000. On the same date the executors of Nels Nelson by written agreement with Zemans extended the time of payment for two years with interest at six per cent represented by coupons. Two of these coupons were paid, and Arthur E. Nelson,

owner by reason of default, elected to declare the whole sum due and filed his bill praying foreclosure and making defendants thereto David M. Zemans and Anna, his wife, Nathan Gumbin and Blossom, his wife, Herman Gumbin and Nettie, his wife, Harry Gumbin, a bachelor, and the Chicago Title & Trust Company.

David M. Zemans answered the bill, denying that he was indebted and admitting the execution of the notes, trust deed, extension agreements and coupons. He averred that all payments were made by Nathan, Herman and Harry Gumbin; that the notes, extension agreements, etc., were executed by him at the request of the Gumbins; that the real estate was conveyed to him at their request; that he had no real interest in the property but was the mere agent and instrument of the Gumbins for whose benefit he took title; that immediately after acquiring the title he made and delivered a quitclaim deed at the direction of Nathan Gumbin, conveying the land to an undesignated grantee. He averred that he ought not to be required to pay the notes as the same represented the valid and existing obligations of Nathan, Herman and Harry Gumbin, and he personally denied all liability.

The Gumbins filed an answer neither denying nor admitting the allegations of the bill but demanding strict proof thereof.

June 7, 1932, Zemans filed his cross-bill, setting up the prior proceedings and averring that at the time of the execution of the notes and trust deed he was an employee of the General Fiber Company, of which Harry, Nathan and Herman Gumbin were directors; that he obtained his sole means of livelihood from this employment, and was guided and directed by the Gumbins; that the Gumbins jointly undertook to speculate in real estate, and that a Mr. Feldman, another employee of the General Fiber Company, initiated negotiations for the purchase of the premises in question by direction of the Gumbins; that one Hartman,

attorney for the General Fiber Company, had charge of closing the transactions; that Hartman prepared the warranty deed, by which Nelson conveyed the premises to Zemans; that Hartman was advised by Nathan Gumbin that neither he nor his brothers desired to become personally liable on the notes, and that Nathan Gumbin on behalf of himself and his brothers instructed and directed Zemans to execute the principal notes and interest coupons, together with the trust deed; that he received no consideration for making the notes; that Nathan Gumbin stated to him that the notes were not binding upon him, but that the Gumbins would pay the obligation at maturity; that after executing the notes and trust deed, Zemans was directed by Nathan Gumbin on behalf of himself and brothers to execute a deed to the property in question which did not contain a grantee; that the same was delivered to Nathan Gumbin after having been executed, acknowledged and delivered by Zemans; that the three Gumbins paid the principal promissory note of $10,000 together with six interest coupons, to Nels Nelson; that no demand for payment was ever made upon Zemans but such demand was made on the Gumbins; that on February 27, 1928, $7,500 was paid on the second principal note by the Gumbins; that at that time Nels Nelson demanded payment of the balance from the Gumbins, who requested an extension, and that Nathan directed and instructed Zemans to execute the extension agreement, which he did; that it was not to evidence his personal obligation but that in executing the same he acted as the agent of the Gumbins, it being previously understood and agreed that the Gumbins were personally bound; that this oral agreement was evidenced by the fact that the Gumbins had previously made substantial payments and that Zemans was repeatedly assured that he would never be personally responsible; that the $3,500 paid April 1, 1930, was

never demanded of him but that the payment was made by the Gumbins, and that the extension agreement made at that time was executed also by him at the direction of the Gumbins, he acting as their agent and it being orally understood and agreed that the Gumbins were personally bound to pay, and that he was induced to execute the instruments without stating on their face the capacity in which he acted because of the repeated promises and assurance of Nathan that he and his brothers would satisfy the indebtedness; that in consequence of his executing the principal note, coupons, trust deed and extension agreements he will be required to pay any deficiency arising in the event the proceeds of the sale of the property sought to be foreclosed and sold are not sufficient to satisfy the indebtedness due Arthur E. Nelson; that the Gumbins should and ought to be required to pay the balance of any moneys due and owing or to pay any deficiency judgment which might be entered by the court in the proceeding.

The cross-bill made defendants thereto Arthur E. Nelson, Nathan, Harry and Herman Gumbin, and the Chicago Title & Trust Company, as trustee, and prayed that there might be an accounting fixing the amount due by the Gumbins to Arthur E. Nelson, and that the court might find that the Gumbins were personally liable for the indebtedness and that they might be directed to pay Nelson any amount found due, and that in the event the proceeds of the sale were not sufficient to pay in full the amount found due, a deficiency judgment might be entered against the Gumbins and in favor of Arthur E. Nelson, and for other and further relief.

Arthur E. Nelson answered the cross-bill June 17, 1932, admitting certain paragraphs of the bill and neither admitting nor denying others, but demanding strict proof thereof.

The Gumbins having been ordered by the court to answer and having failed to file an answer, an order was entered that the cross-bill be taken as confessed by them. After slight amendments the cross-bill was put at issue and referred to a master, who reported finding the facts as recited in the bill with reference to the execution of the trust deed, extension agreements, notes and coupons, and that there was due to complainant Nelson $33,318.07, for which he was entitled to a lien and to a decree of foreclosure.

With reference to the transaction by Zemans, the master found that Nels Nelson held title to the property originally; that one Feldman entered into an agreement to purchase it; that Feldman was acting in behalf of the Gumbins, and that they gave him the earnest money to use in making the purchase, the price being $65,000; that Feldman executed said contract to purchase as agent for the Gumbins; that on December 3, 1925, the three Gumbins paid to Nelson $13,000, the balance of the cash consideration, and directed Nelson to deliver a deed to the property to Zemans; that Nathan Gumbin directed conveyance of the title to Zemans for the sole purpose of enabling him to sign the trust deed then executed and delivered to Nels Nelson as security for the two notes; that Zemans had no interest in the property at the time of executing the trust deed, and that he acted in accordance with the instructions of Nathan Gumbin, on behalf of himself and his brothers; that Zemans received no consideration, and that in executing all these papers he was acting as the agent of the three Gumbins.

The master also found the execution of the quitclaim deed by Zemans as set up in his cross-bill and found the whole transaction was for the benefit of the Gumbins, and that although carried on in the name of Zemans, the Gumbins were in fact the parties at interest, paying the entire consideration and holding the entire beneficial interest.

From all the evidence the master concluded that David M. Zemans, Nathan, Harry and Herman Gumbin were personally indebted to complainant in the sum of $33,318.07; that the material allegations in the bill of complaint and the cross-bill were supported by proofs and that the equities were with complainant and cross complainant; that if the proceeds from the sale of the premises foreclosed were insufficient to satisfy the indebtedness, complainant would be entitled to a deficiency decree against these four who were personally liable, it being recommended, however, that should Nathan, Harry or Herman satisfy the deficiency, they would not be entitled to assert any rights or claims against Zemans. The master also recommended the decree of foreclosure as prayed.

The matter came up before the chancellor and the cause was re-referred to the master in order to permit the Gumbins to file objections to the master's report, they not having theretofore filed such objections nor offered any evidence on the hearing. They then filed objections to the effect that the evidence did not sustain the finding of the master and specifically objected to the recommendation of the master that in event of a deficiency they should be held personally liable. Upon the hearing the objections were overruled, and a decree of foreclosure and sale was entered November 4, 1932, in accordance with the report and recommendations of the master, with the exception that the decree provided that the amount received from the sale should constitute satisfaction in full as to Zemans and he should be discharged from further liability. Thereafter, on November 30th, upon motion of solicitors for the Gumbins, the court ordered that the decree of November 4th should be so modified as to direct in substance that if there should be a deficiency shown, the court retained jurisdiction for the purpose of determining whether or not the Gumbins, or any one of them, were personally liable upon the indebtedness for the defi-

ciency and for the purpose of entering a deficiency decree against any or all the defendants who might be held personally liable.

The master filed his report of sale December 2, 1932, and reported a balance due to complainant and unpaid of $20,216.46. The court entered an order approving the report of sale, the death of Harry Gumbin was suggested, and the court further ordered that it reserve jurisdiction for the purpose of determining the liability of the Gumbins with reference to the deficiency, and the matter was set down for hearing January 23, 1933.

January 25, 1933, the court entered an order in which it "finds that Nathan Gumbin, Herman Gumbin and/or the estate of Harry Gumbin, deceased, and/or the executor, executors, administrator or administrators of his estate, or the heirs at law of said Harry Gumbin, deceased, are not liable for such deficiency."

We regret that the duty is again cast upon us of calling attention to the unfortunate use of the symbol "and-or" in a proceeding of a court in this jurisdiction, and we direct the attention of the trial court and its solicitors to the authorities which condemn the use of this and similar abominations, such as was/were. *State v. Dudley,* 159 La. 872; *Clay County Abstract Co. v. McKay,* 226 Ala. 394; *American Bar Journal,* July, August, September, October, 1932; *Preble v. Architectural Iron Workers' Union of Chicago,* 260 Ill. App. 435; *Carlin v. Millers Motor Corp.,* 265 Ill. App. 353; *Tarjan v. National Surety Co.,* 268 Ill. App. 232; *Thibodeaux v. Uptown Motors Corp.,* 270 Ill. App. 191.

In this court, notwithstanding the numerous defendants in error, briefs have been filed only in behalf of Herman and Nettie Gumbin. Complainant has not assigned error on that part of the decree which releases David M. Zemans from liability for the deficiency after sale. Complainant acquiesces in the decree of the court

in that regard. His sole complaint is that the court failed to approve the finding of the master that the Gumbins were personally liable and to enter a deficiency judgment against them on that finding.

There are several reasons why we think this court may not find error in these respects. In the first place, the bill of complaint does not seem to be framed upon the theory that the Gumbins were personally liable. It is not so alleged anywhere in the bill. So far as the Gumbins are concerned, the bill simply alleges that they have or claimed to have some interest (the precise nature of which is unknown to complainant) in the premises ''as purchasers, mortgagees, grantees, lien holders, parties in possession, judgment creditors, or otherwise, but such interests, if any, have accrued since, and are subordinate to complainant's lien.''

The prayer of the bill is that a deficiency decree may be entered in favor of complainant and against David M. Zemans ''or the person or persons liable for said indebtedness to pay such deficiency.'' The allegations of the bill as above set forth, construed in the light of this prayer, are, we think, wholly insufficient to sustain a decree of deficiency against the Gumbins. (*Brown v. Kennicott,* 30 Ill. App. 89; *Boisot v. Chandler,* 82 Ill. App. 261; Reeve, Illinois Mortgages, p. 764, sec. 679; *Rowan v. Bowles,* 21 Ill. 16.) Moreover, complainant does not stand in any position to complain that defendant Zemans' cross-bill was taken as confessed. Zemans is not here complaining. His cross-bill proceeded upon the theory that he, acting as the undisclosed principal of the Gumbins, had become liable for the deficiency, and his cross-bill prayed relief in that respect. The decree releases him from liability for any deficiency after sale and complainant has acquiesced in that finding. Plainly Zemans cannot be reimbursed when he has not been damaged. *Brand v. Henderson,* 107 Ill. 141; *Otter Creek Lumber Co. v. McElwee,* 37 Ill. App.

285; *Walkof v. Fox,* 153 N. Y. S. 27; *Hidalgo Steel Co. v. Moore & McCormack Co.,* 298 Fed. 331.

The foregoing would seem to be determinative of the cause. However, complainant's contention cannot prevail for another reason. The Gumbins were not parties to the notes which represented the indebtedness for the purchase price of this real estate. These notes were not ambiguous in any respect, and that being true (as we understand the law) defendants, who were not parties to the negotiable instruments, cannot be held liable thereon. Indeed, the evidence in this record indicates (and it is a fair inference from all of it) that both parties agreed that the obligation of Zemans should be accepted instead of that of the actual purchasers. Defendants cannot be held liable on unambiguous paper to which they are not parties. Cahill's St. ch. 98, ¶ 38 (Smith-Hurd's Ill. Rev. St. 1933, ch. 98, sec. 38, p. 1922). See also Restatement Agency, sec. 152, and Illinois annotations of the same section. *Bartlett v. First Nat. Bank of Chicago,* 156 Ill. App. 415; *Towler v. Mt. Carmel Trust & Savings Bank,* 206 Ill. App. 427; *People ex rel. Russell v. Michigan Ave. Trust Co.,* 229 Ill. App. 512; *Metz v. Dionne,* 250 Ill. App. 369; *Foster v. Perry,* 255 Ill. App. 635; *Shiel v. Chicago Title & Trust Co.,* 262 Ill. App. 410.

Again, the trust deed also being in writing and under seal is subject to the same rule. One not a party to it cannot be held liable thereon. Restatement Agency, sec. 151, and Illinois annotations of the same section; *Walsh v. Murphy,* 167 Ill. 228; *Chicago Title & Trust Co. v. Franklin,* 187 Ill. App. 388; *Tribune Co. v. Wendell,* 192 Ill. App. 639; *Gardner v. Shekleton,* 253 Ill. App. 333. The Gumbins can therefore not be held on the theory that they were undisclosed principals.

Defendant argues, citing many cases from this and other jurisdictions, that the Gumbins are liable for the deficiency arising after the foreclosure sale on the

theory that they assumed and agreed to pay the mortgage indebtedness; that their liability is therefore not based on the notes and other writings executed by Zemans, but upon their distinct and separate promise to assume and pay the indebtedness. The argument is not without force, but in the absence of any bill by them based on that theory, we think it unnecessary to decide that question.

The judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.