In re Estate of Peter Joseph Gillen.
Fred J. Hempen, Executor of the Last Will and Testament of James Gillen, Deceased, Appellant, v. Mary E. Gillen, Executrix of the Last Will and Testament of Peter Joseph Gillen, Deceased, Appellee.

Gen. No. 9,018.

Opinion filed January 15, 1937.

A. B. LAGER, of Carlyle, and SMITH & MURRAY, of Centralia, for appellant.

JOHN F. PEARL and FRANK K. LEMON, both of Clinton, for appellee.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of DeWitt county. The action is based on a claim filed by Fred J. Hempen, executor of the last will and testament of James Gillen, deceased, in the county court of DeWitt and against the estate of Peter Joseph Gillen, deceased. The claim was disallowed in the county court and an appeal was heard in the circuit court where an order was entered denying the claim. There were, of course, no written pleadings in the case.

The facts in the case are not seriously in dispute and in the main are as follows: James Gillen was a Catholic priest residing at Aviston in Clinton county, Illinois. He died on June 20, 1932, leaving a last will and testament which was admitted to probate by the county court of Clinton county and the appellant was appointed executor of said will. Peter Joseph Gillen was a brother of James Gillen and was a physician residing in Clinton, DeWitt county, Illinois. He died testate on April 20, 1931. His wife, the appellee, Mary E. Gillen, was appointed executrix of his will by the county court of DeWitt county.

In the years of 1927 and 1928, Peter Joseph Gillen and Mary E. Gillen, his wife, borrowed the sum of $3,350 from James Gillen and to evidence this indebtedness three promissory notes aggregating said principal amount were executed by Peter Joseph Gillen and Mary E. Gillen, his wife. These three notes constitute the basis for the claim in this case. On May 28, 1930, James Gillen executed his last will and testament in which he provided first, for the payment of his just debts and funeral expenses, and second, that the balance of his estate be distributed by his executor in accordance with a letter of instructions. In the proceedings to probate the will to which all of the persons interested in this suit were made parties, the county court admitted the will, together with the letter of in-

structions, to probate as the last will and testament of Father James Gillen, deceased. Subsequently, a bill was filed in the circuit court of Clinton county for the construction of said last will and testament, to which suit Mary E. Gillen, together with all the children and heirs at law of Peter Joseph Gillen, were made parties to said suit and appeared by counsel. On a hearing the circuit court of Clinton county entered a decree construing the will of Father James Gillen, deceased. Par. 7 of the Letter of Instructions in the James Gillen will provided as follows:

"To Peter Joseph Gillen, M. D., Clinton, O. Cancel notes of indebtedness to me and pay cash...$1000.00."

While the language of that paragraph described the legatee as Peter Joseph Gillen, M. D. of Clinton, Ohio, it was conceded by all parties and decreed by the court that this paragraph referred to testator's brother Dr. Peter Joseph Gillen, of Clinton, Illinois. The court further held, in that decree, that inasmuch as Peter Joseph Gillen had died prior to the death of said testator, that the legacy in said paragraph lapsed and did not become effective. The decree further provided that said legacy did not constitute payment or cancellation of the notes involved in this suit.

On November 26, 1931, James Gillen called at the former home of his brother in Clinton, Illinois, and had a conversation with Mary E. Gillen. She told him that she wanted to pay the amount due to him. He said he would take $500 for all the notes due him and then he changed his mind and said that she had better make a check for $520. Mary E. Gillen wrote out the check for that amount and Father James Gillen indorsed the check on the back by writing the words: "In full for notes," and signed his name, "Rev. James Gillen." He said he would accept this money as full payment for all the notes that were due him, and the main reason he did that was due to the death of Dr. Gillen. Imme-

diately thereafter, James Gillen met the daughter of appellee, showed her the check and said: "I am going to relieve your Mother of some of her financial worries. She has given me this check in payment for the notes and the balance I will give—I am giving to you —or to Mother and the children to be used as she sees fit." After the death of Peter Joseph Gillen, Father Gillen made two or three trips to Clinton to call on Mary E. Gillen. In talking over their affairs he told appellee that he was going to make his home with her and family the rest of his days after resigning his pastorate at Aviston, Illinois.

On June 6, 1932, Rev. James Gillen wrote to the appellee Mary E. Gillen as follows: "I have surprising news. I am about to resign and retire within two weeks or so. The Chancellor was here yesterday and talked matters over. You have invited me to your home. I shall come, and then we can talk matters over. . . ." Later on, but under no specific date, the Rev. Gillen again wrote the appellee, as follows:

"His Excellency, the Bishop, was here yesterday. He was very gracious. He said he thought he should come to see me as I had no car to drive. He told me if I wanted to stay he would give me an assistant. But thought, too, I had done my share in the vineyard and was entitled to a rest. He said it might prolong my life. I told him in what kind and able hands I would fall into, how kind and self sacrificing you had been to my brother and that you would also take good care of me. I formally resigned the pastorate of this church, which is required by canon law, when one ceased to administrate. I am getting things straightened out here. . . . It is as yet to be kept quiet, because he has to consider whom to send here, and occasions another move, etc. . . . I anticipate that you and I and the children will live happily together and I think my contribution will make your financial burden a little easier. . . ."

The appellant based his appeal upon the principle of law, that where a debt is liquidated and the amount is not in dispute, the payment of an amount less than the amount due does not discharge the debt; that this rule applies even though the payment of the lesser amount may be accompanied with an agreement on the part of the creditor to release or forgive the balance of the indebtedness; that the promise of the creditor to accept the lesser amount in full payment of the debt is wholly without consideration and unenforceable. *Hayes v. Massachusetts Mutual Life Ins. Co.*, 125 Ill. 626; *Hart v. Stron*, 183 Ill. 349. The main question in the case, therefore, is whether or not the testimony above set forth constitutes a sufficient consideration for the agreement to accept the check of $520 in full payment of the notes involved in this case. It must be remembered that this is not a suit at law but is a claim filed in the probate court and in such an action the court has the right and it is its duty to consider claims and defenses of both a legal and equitable nature. *Foreman-State Trust & Savings Bank v. Tauber*, 348 Ill. 280. While the common law doctrine that a debt cannot be settled by payment of a less sum is still the law in the State of Illinois, yet a slight variation in the way of added consideration will remove a case from the operation of this strict common law rule. *Winter v. Meier*, 151 Ill. App. 572. A very equitable rule is stated by the Court of Appeals of the State of New York, *Jaffray v. Davis*, 124 N. Y. 164, 26 N. E. 351, where the court said:

"The general doctrine in *Cumber v. Wane* (1 Strange 426), and the reason of all the exceptions which have been engrafted on it may be summed up as follows, viz.: That a creditor cannot bring himself by a simple agreement to accept a smaller sum in lieu of an ascertained debt of a larger amount, such agreement being nudum pactum, but, if there be any benefit, or even any

legal possibility of benefit, to the creditor thrown in, that additional weight will turn the scale, and render the consideration sufficient to support the agreement.''

It is clear from the testimony that the Rev. James Gillen never intended that the notes upon which this claim is based should be collected and that he took the steps he thought necessary to cancel the notes, showing plainly that the equities of this case are entirely against the claim. The surviving party to the agreement, Mary E. Gillen, the appellee, is because of the death of Rev. James Gillen, an incompetent witness; however, the testimony of the two children of Mary E. Gillen, the many surrounding circumstances, the letter of instructions attached to the will of Rev. James Gillen, and his letters to Mary E. Gillen lead us to believe that the Rev. James Gillen entered into this arrangement or agreement and that he was to receive benefits therefrom by living the rest of his lifetime with the family of Mary E. Gillen. Surely, there was a possibility of his receiving a benefit from being able to obtain a suitable home for himself upon his resigning and retiring from his pastorate. It is our judgment that this constituted a sufficient consideration to sustain the contract.

It is further contended by the appellant that the court improperly admitted the testimony of the two children of Mary E. Gillen because they were incompetent under the statute. The statute relied upon is sec. 2 of Ill. State Bar Stats. 1935, ch. 51, ¶ 2; Jones Ill. Stats. Ann. 107.068, and reads as follows:

''No party to any civil action, suit or proceeding, or person directly interested in the event thereof shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator,

heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, . . . "

The will of Dr. Peter Joseph Gillen, deceased, devised and bequeathed his entire estate to Mary E. Gillen, and the children are not interested as beneficiaries in the will or in his estate. They are, therefore, not disqualified to act as witnesses in this case. In the case of *Britt v. Darnell,* 315 Ill. 385, the court said: "The interest disqualifying a witness must be such that pecuniary gain or loss will result to the witness from the judgment or decree of the court." The children of Dr. Peter Joseph Gillen could have no pecuniary interest in the judgment of the court in this case.

In accordance with the views above expressed, the judgment of the circuit court was correct and is hereby affirmed.

*Affirmed.*