In the Matter of Estate of Andrew J. Maloney, Deceased. In re Claim of Edgar Godwin, Appellant.

**Gen. No. 9,303.**

Opinion filed June 22, 1938.

RUNYARD & BEHANNA, of Waukegan, for appellant; EUGENE M. RUNYARD and FRED B. MEYER, of Waukegan, of counsel.

FREDERIC ULLMANN, of Chicago, and FRANK OPEKA, of North Chicago, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

Edgar Godwin, appellant, filed his claim against the estate of Andrew J. Maloney in the probate court of Lake county. The claim was based upon three notes secured by a trust deed. The indebtedness was alleged to be that of the said Andrew J. Maloney. The claim was heard by the probate court and allowed in the

amount as filed, $29,394.12. The estate prosecuted an appeal to the circuit court of said county, where the cause was heard by the court and the claim denied. The claimant prosecutes this appeal from the judgment of the circuit court dismissing his claim.

The evidence in this case is not in dispute. The estate offered no oral testimony. It appears that in the summer of 1925, the claimant was then residing on his farm in said county. He was acquainted with Andrew J. Maloney. John H. Rouse and Richard Lyons were engaged at the time in the real estate business under the firm name of Lyons & Rouse. Mr. Rouse was also cashier of a bank at Mundelein. Mr. Maloney, in April, 1925, went to the office of the above real estate firm and announced that he desired to purchase the Godwin farm because he had information that Mr. Samuel Insull intended to effect the acquisition of this farm for the purpose of a golf course. Mr. Maloney further stated that he knew of Mr. Insull's plan, that there was an opportunity for him to make a large profit as it would be necessary for Mr. Insull to have this farm in carrying out his plan, but that he did not want Mr. Insull to know he had anything to do with the deal. Prior to this time this real estate firm had negotiated the purchase of other farms for Mr. Maloney.

During the above visit of Mr. Maloney to the office of Lyons & Rouse, Mr. John H. Rouse, a member of the real estate firm, called his uncle, Robert F. Rouse, into the conference with Mr. Maloney and asked his uncle if he would take title to the farm for Mr. Maloney, as Mr. Maloney stated he did not want to be known in the deal. The uncle agreed to this accommodation, whereupon Mr. Maloney issued his check for $1,500, to be used as a down payment in the purchase of appellant's farm. Mr. Maloney signed a purchase contract and requested that nothing be said about it as he did not want Mr. Insull to know that he was trying to buy

the property. The down payment advanced to Mr. Rouse was paid to appellant, a survey of the farm was made, the abstract brought down to date and delivered to Mr. Maloney for his examination. Subsequently, and on July 27, 1925, a deed to the premises from appellant Godwin and wife was made to Mr. Robert F. Rouse and wife, and a deed from them to Mr. Maloney was executed and placed in escrow awaiting a trust deed, notes, and interest coupons to be executed and delivered before the final consummation of the transaction.

The trust deed by Rouse and wife was executed under date of November 30, 1925. It described the farm of appellant, described four principal notes, of even date, payable on or before five years thereafter, three of such notes for the principal sum of $10,000 each and one for the principal sum of $1,500, all bearing interest at 6 per cent as evidenced by interest coupons. A second mortgage for the same premises was executed by Mr. Maloney, of the city of Chicago, to Mr. Lyons for the sum of $7,900, such indebtedness evidenced by two notes, one for $5,000 and one for $2,900, both due 5 years after date with 6 per cent interest. This mortgage discloses that it was made subject to the prior trust deed of November 30, 1925, executed by Rouse and wife in the sum of $31,500, and due on or before 5 years from November 30, 1925. Mr. Maloney executed this second mortgage under date of December 1, 1925. It appears that approximately $18,000 was paid in cash on the purchase price of the farm and that about $3,000 of this sum went to Lyons & Rouse as commission, and the balance to appellant Godwin. It further appears that the execution of the second mortgage by Mr. Maloney to Lyons, together with the $3,000 cash received by the real estate firm, represented its commission for negotiating the deal. The insurance policy on the property was assigned to Mr. Maloney.

This policy expired soon after the consummation of the deal and a new three-year policy was issued to Mr. Maloney under date of December 22, 1925, on the buildings located on said premises.

The evidence on behalf of appellant is to the effect that Mr. Maloney did not want to sign the first trust deed and notes because he did not want Mr. Insull to know that he was the owner of this land. It does not appear that any of the members of the real estate firm ever took possession of the premises or had anything to do with defraying the expenses incident to the deal; that the transaction was carried on wholly on the account of Mr. Maloney. Mr. Robert Rouse states that he took no possession of the property nor exercised any acts of ownership over the same; that he never paid anything on the principal or interest; that he had nothing to do with the transaction except permitting his name to be used as an accommodation; and that he had no knowledge of an extension agreement of the trust deed which was executed at its maturity, and that he was not a party to such extension.

It appears that on November 30, 1930, 5 years after execution of the trust deed, that articles of agreement were entered into between appellant Godwin as the owner and holder of the notes, and Andrew J. Maloney, as the owner of the premises described in said trust deed, wherein by the terms of said agreement the entire transaction involved in this proceeding is recognized, identified and set out, disclosing the trust deed as executed by Mr. Rouse together with the recording thereof. The extension agreement then recites that the notes under the trust deed are due and that Mr. Maloney as owner of the premises desires to renew the unpaid portion of the indebtedness for another 5 years. It then recites that Mr. Maloney has paid on the principal indebtedness under the trust deed, sufficient sums to leave a present balance due of $26,000,

and it is recited that as to this amount an extension is granted for a period of 5 years from November 30, 1930. This extension agreement was executed by appellant Godwin and Mr. Andrew J. Maloney. In addition thereto, certain interest coupons were also executed by Mr. Maloney covering payment of interest during the extension agreement period.

Mr John H. Rouse testified that he was engaged in the real estate business and resided in Mundelein; that he was also cashier of the bank in said city; that he held a license as a real estate broker and was engaged in business with Mr. Richard Lyons under the firm name of Lyons & Rouse; that he was acquainted with Mr. Maloney and assisted in the purchase of Godwin's farm in 1925; that prior to that time he had purchased other farms for Mr. Maloney. He states that Mr. Maloney came to their office in Mundelein about the last of April or first of May in 1925, and advised them that he desired to purchase the Godwin farm; that he had inside information that Mr. Samuel Insull was going to purchase this farm along with others for the purpose of laying out a golf course, and that there was a chance to make some money if he could get the Godwin farm, and asked this witness to find someone to take over the title for him. The witness states that he summoned his uncle, Mr. Robert F. Rouse, and in the presence of Mr. Maloney advised his uncle what Mr. Maloney wanted to do; that his uncle agreed to hold the title for Mr. Maloney; that Mr. Maloney drew his check for $1,500 and left it with them as a down payment on the farm. The witness then states that he drew a contract which he took down to Mr. Maloney on the next day or two following this conference, and that he signed it and requested the witness to say nothing about it, as he did not want Mr. Insull to find out he was trying to buy the property. The witness states that about a year prior to the commencement of this

litigation, he cleaned out his safe and destroyed all old papers which were no longer considered worth keeping; that this contract was about 10 years old and that he did not consider it of any consequence. He states that appellant had a joint stock land bank mortgage on his farm for about $8,000 and that at the time of the consummation of the transaction, this mortgage was paid off; that the money was obtained from Mr. Maloney and turned over to Mr. Godwin; that the purchase price to be paid Godwin was approximately $48,000, payable about one-third in cash and the balance on a mortgage. The witness states that at the time of the closing of the transaction, Mr. Rouse, Mr. Lyons, Mr. Godwin, Mr. Andrew J. Maloney and his brother, Francis Maloney, were all present. Mr. Maloney's brother, Francis, received a part of the commission growing out of the deal. The witness states that $18,000 was paid by Mr. Maloney at the time, $3,000 of which was retained by the real estate brokers and the balance paid to Mr. Godwin, and that this meeting of the parties, being the final consummation of the deal, took place during the first part of December, 1925. It appears that Mr. Maloney drew a check on December 4, 1925, in the sum of $15,000, payable to himself, and indorsed by him to the order of the State Bank of Mundelein. A previous check for the sum of $3,000 had been drawn by Mr. Maloney payable to himself and indorsed to the order of his brother Francis, and by Francis indorsed to Mr. Rouse. The testimony of this witness is in detail in respect to the transaction, the execution of the notes and mortgages incident thereto, and the payment of money at various times by Mr. Maloney in the way of checks. The testimony of Mr. Robert F. Rouse was similar to that of Mr. John H. Rouse.

The testimony of the witness, Ernest Godwin, Jr., is to the effect that in the year 1925, he was living on the

farm with his father, the appellant; that he saw Mr. Maloney about the first of June, 1925, at the farm; that Mr. Maloney stated to him and his father, "I am Mr. Maloney. I am the man that bought your farm." This witness says that Mr. Maloney asked his father if he had received the down payment check and that his father said he had. The witness states that about November of the same year, Mr. Maloney came out to the farm for the purpose of renting it to them. It appears that Mr. Maloney did by lease under date of February 1, 1926, rent a portion of the farm to appellant for a period of one year extending from March 1, 1926, to February 28, 1927, for a cash rental of $300. This lease covered only the land upon which the house, barn and other buildings were located, together with an orchard and garden tract.

The witness, George Smith, testified that he was at the premises when Mr. Maloney came out and advised appellant that he had bought his place; that he heard him ask about the soil and about the lake which joined the premises; that this lake was known as Insull Lake and that the Insull farm was about 80 yards away from the Godwin farm. The witness also stated he heard Mr. Maloney ask Mr. Godwin if he had received a check and that Mr. Godwin replied that he had. He further states that Mr. Maloney asked Mr. Godwin if he understood that the final payment should be in November and that Mr. Godwin replied that he did. This witness saw Mr. Maloney at the farm later in the year.

The trial court in its remarks with reference to the disposition of this case states: "The record affirmatively shows that at the time of the purchase, Maloney wanted to avoid personal liability and had the real estate agents select a nominal purchaser for the purpose of avoiding personal liability," and further, "There was nothing unlawful in Maloney avoiding personal liability." It is the position of appellee that the

decedent, Mr. Maloney, did not become liable for the indebtedness as the real party in interest, that the application of equitable principles cannot change the fact that Mr. Maloney did not intend to become personally liable for the purchase price of the land, and under the authority as announced in *Nelson v. Zemans,* 275 Ill. App. 447; *Elkhart State Bank v. Schlarman,* 270 Ill. App. 440; *Shiel v. Chicago Title & Trust Co.,* 262 Ill. App. 410, and by force and effect of sec. 18 of the Negotiable Instruments Act [Ill. Rev. Stat. 1937, ch. 98, § 38; Jones Ill. Stats. Ann. 89.038], he not having signed the notes in question, cannot be held liable. The above cases and points urged by appellee were favorably considered by this court in the case of *Bride v. Stormer,* 291 Ill. App. 502. This case was reversed by the Supreme Court in 368 Ill. 524. The facts in the instant case do not vary fundamentally from those that existed in *Bride v. Stormer, supra.* Therefore, the expression of the Supreme Court in that case is controlling herein.

It has long been the rule that probate courts are invested with equitable powers in the consideration and allowance of claims. *Henry v. Caruthers,* 196 Ill. 136, 141; *Foreman-State Trust & Savings Bank v. Tauber,* 348 Ill. 280, 285.; *In re Estate of Gillen,* 288 Ill. App. 436, 440; *In re Estate of Kinsey,* 261 Ill. App. 481, 487; *Trego v. Estate of Cunningham,* 267 Ill. 367, 373–375.

The judgment of the circuit court is reversed and this cause remanded with directions to enter judgment for appellant upon his claim, to be paid in due course of administration.

*Reversed and remanded with directions.*