**Hudson T. HARRISON and Harrison Construction, Inc., a corporation, Plaintiffs,**

v.

**DEAN WITTER REYNOLDS, INC., a corporation, John M. Carpenter and John G. Kenning, Defendants.**

No. 86 C 8003.

United States District Court, N.D. Illinois, E.D.

June 29, 1990.

Thomas P. Ward, Eugene H. Ruark, McBride, Baker & Coles, Malcolm H. Brooks, Chicago, Ill., for plaintiffs.

Paul B. Uhlenhop, Jeffery H. Fradkin, Christopher Stuart, Lawrence, Kamin, Saunders & Uhlenhop, et al., Charles J. Risch, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

This matter is before the court on defendant's, Dean Witter Reynolds, Inc. ("Dean Witter"), motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Plaintiffs, Hudson T. Harrison ("Harrison") and Harrison Construction, Inc., filed a twelve count complaint against Dean Witter and two former employees of Dean Witter, John G. Kenning and John M. Carpenter, which arose out of a multi-million dollar fraud committed by Kenning and Carpenter while employed at Dean Witter. This action was stayed as to Kenning and Carpenter due to their incarceration in a federal penal institution for the fraud involved in the instant civil action.

Count III of plaintiffs' First Amended Complaint, which alleged a violation of § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), was dismissed by the court in a published opinion. *See Harrison v. Dean Witter Reynolds, Inc.*, 695 F.Supp. 959 (N.D.Ill.1988) (Duff, J.). The court denied Dean Witter's motion to dismiss as to counts I, II, IV, VI, VII, IX and XII. *Id.* The court ultimately granted summary judgment in favor of Dean Witter on the other eleven counts of plaintiffs' First Amended Complaint on June 28, 1989. *See Harrison v. Dean Witter Reynolds, Inc.*, 715 F.Supp. 1425 (N.D.Ill.1989) (Duff, J.). The facts underlying this action and the court's rationale for its ruling are adequately contained in the two opinions just cited and will not be reiterated presently.

The court will address relevant facts as necessary in the disposition of Dean Witter's motion for sanctions.

The gist of Dean Witter's arguments for sanctions is that had plaintiffs made a reasonable inquiry into the facts and applicable law they would have discovered that all of the claims asserted against Dean Witter were utterly meritless and plaintiffs would have known that relief would ultimately be denied. In light of this, Dean Witter contends the suit was pursued for an improper purpose, mainly to cut plaintiffs' losses by going after a "deep pocket". Dean Witter relies almost exclusively for much of its argument on the court's discussion of the facts and law contained in the court's memorandum of opinion and order granting Dean Witter's motion for summary judgment.

Rule 11 provides in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleadings, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increases in the cost of litigation.

FRCP Rule 11.

Upon a motion or its own initiative, a court *shall* impose an appropriate sanction upon a represented party, the person who signed the paper or both. FRCP Rule 11.

Rule 11 contains two grounds for sanctions: a "frivolous clause" and an "improper purpose" cause. *Stotler and Company v. ABLE*, 870 F.2d 1158, 1166 (7th Cir 1989). The "frivolous clause" is composed of two parts: (1) whether the party or the attorney made a reasonable inquiry into the facts, and (2) whether the party or the attorney made a reasonable inquiry into the law. *Id.* In determining whether the attorney made a reasonable inquiry into the facts of a case, the court should consider: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney relied upon his or her client for the factual foundation of the pleading, motion, or other papers; whether the case was acquired from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts. *Id.*

In determining whether the attorney made a reasonable inquiry into the law, the court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law. *Id.* The standard under Rule 11 is one of objective reasonableness under the circumstances and focuses on the arguments actually advanced by a party, not whether reasonable arguments could have been advanced. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750 (7th Cir.1988).

The fact a party loses a motion for summary judgment does not automatically imply that a Rule 11 violation has occurred. *See Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282 (N.D.Ill. 1988) (addressed argument that filing of unsuccessful summary judgment motion amounted to Rule 11 violation). In *Quaker*, Judge Shadur, relying on Supreme Court precedent, explained that summary judgment is not only appropriate where there are undisputed facts but also when the non-movant's evidentiary offering is too thin to warrant the case going to trial, i.e., there is insufficient evidence to allow a rational fact finder to find the facts in favor of the non-movant's position. 123 F.R.D. at 285. The reliance on a party's loss of a summary judgment motion as the basis for arguing Rule 11 sanctions is even less probative when the allegedly offending filing is the original complaint as opposed to the summary judgment motion itself.

This is so because the facts and, to a lesser extent, the applicable law are not normally as familiar to the parties at the filing stage. In general, parties are not as knowledgeable about the facts which are in the possession of the opposing party, their agents or non-parties and consequently, cannot necessarily know the ultimate application of the law to the, as yet, incomplete and undeveloped facts.

In support of its motion for sanctions, Dean Witter relies extensively on the reasons the court granted summary judgment in favor of Dean Witter. Dean Witter seems to argue that, in light of the summary judgment ruling, it is obvious plaintiffs failed to meet the Rule 11 requirements of reasonable inquiry. The rationale of the court's determination that Dean Witter was entitled to summary judgment is adequately contained in the court's published opinion and need not be restated here. *See Harrison v. Dean Witter Reynolds, Inc.,* 715 F.Supp. 1425 (N.D.Ill.1989). Dean Witter's arguments do not directly address the proper focus of a Rule 11 inquiry in the instant case, i.e., whether plaintiffs and their attorneys undertook a reasonable inquiry into the facts and applicable law before filing. The record does not contain much on this question but the court can look at plaintiffs' thirty-one page First Amended Complaint in order to determine what facts plaintiffs and their attorneys were aware of before filing and what legal theories were pursued initially.

In paragraphs 3–7, plaintiffs make various allegations concerning the parties and their relationships. Paragraphs 8–9 detail Kenning's and Carpenter's prior employment at Prudential–Bache Securities, Inc. and their discharge due to the failure of a large bond investment deal and other improper handling of customers' investments. Plaintiffs alleged that Carpenter's and Kenning's bond deals at Prudential–Bache Securities, Inc. were also fraudulent and in violation of the securities laws and this was also part of why they were discharged. Paragraphs 8–13 describe Dean Witter's recruitment of Carpenter and Kenning and their alleged failure to adequately investigate Carpenter's and Kenning's back-

grounds before hiring them to solicit securities business nationwide and providing them with Dean Witter office space, an "800" phone number and business cards reflecting that Kenning and Carpenter were employees of Dean Witter. Plaintiffs also alleged that Kenning and Carpenter were supervised by Dean Witter personnel including Manager Richard Frost. Plaintiffs also alleged that after hiring Kenning and Carpenter, Dean Witter continued to receive information concerning Kenning's and Carpenter's allegedly fraudulent dealings in their prior employment which consisted of customer complaints and notices of state and federal regulatory investigations. Plaintiffs alleged Dean Witter again failed to adequately investigate this information and take appropriate action to protect persons doing business with Kenning and Carpenter.

In paragraphs 14–29, plaintiffs detail with particularity the fraudulent scheme perpetrated by Kenning and Carpenter. These allegations are phrased for the most part in terms of what plaintiffs were told and what was represented to them by Kenning and Carpenter. These allegations take up eight pages of the complaint and will not be restated here as they are substantially what the court discussed as plaintiffs' version of events in this court's summary judgment ruling. Paragraph 30 alleges that at all relevant times, Kenning and Carpenter were acting within the scope and apparent scope of their duties and responsibilities as Dean Witter employees. Paragraphs 31–33 allege the details concerning Kenning's and Carpenter's extensive trading activity in options transactions and the huge losses they sustained in their personal trading accounts which were far in excess of their income and the facts which should have reasonably led to Dean Witter inquiring about where Kenning and Carpenter were obtaining such funds. Additionally, plaintiffs alleged Dean Witter benefitted directly and indirectly by the activity in Kenning's and Carpenters's accounts.

Paragraph 34 alleges that Dean Witter exercised direct and indirect control over

Carpenter and Kenning with respect to their activities sufficient to make Dean Witter liable under § 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a) and under principles of *respondeat superior.*

Paragraph 35 alleged that all the defendants owed plaintiffs fiduciary obligations with respect to the management of plaintiffs' investments in that defendants represented themselves as experienced experts in the management of investments and plaintiffs were inexperienced and relied on defendants' representations.

The last fifteen pages of plaintiffs' complaint incorporated the preceding allegations and then set out the twelve specific counts upon which plaintiffs sought recovery. Count I stated a claim for violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)(5) promulgated thereunder. Count II alleged a violation of section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a), and alleged that Dean Witter was liable on principles of *respondeat superior* in light of their knowledge of Kenning's and Carpenter's acts, or for recklessly failing to adequately supervise Kenning and Carpenter in their dealings with plaintiffs. Count III and IV alleged RICO violations as discussed in the court's order of dismissal. *See* 695 F.Supp. 959 (N.D.Ill.1988). Count V alleged a default on the promissory notes, but does not allege Dean Witter signed the notes. It does allege that demand for payment had been made and refused by all the defendants. Count VI alleges common law fraud. Count VII alleges breach of fiduciary duties. Count VIII alleges breach of written and oral contracts. Count IX alleges breach of a covenant of good faith and fair dealing. Count X alleges conversion. Count XI alleges negligence of Dean Witter in hiring and retaining Kenning and Carpenter. Count XII alleges a violation of Florida statutory law.

■ While plaintiffs' First Amended Complaint is not necessarily the best or clearest pleading this court has encountered, it is evident that plaintiffs and their attorneys did an extensive prefiling factual inquiry into a extensive and complicated course of events. However, this does not necessarily prevent sanctions. False statements, which were known to be false or could have been determined to be false upon reasonable inquiry at the time of filing, will merit sanctions. *See Medical Emergency Service Associates v. Foulke,* 844 F.2d 391 (7th Cir 1988). Similarly, misleading representations of inferences as facts, whether careless or deliberate, misdirects the courts and parties and can lead to sanctions. *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810 (7th Cir.1987). However, Dean Witter does not cite to any factual allegations of the complaints filed in this action to argue they are false or totally unsupportable. Dean Witter argues that plaintiffs' legal theories of recovery are totally unsupportable in light of the facts. Again, Dean Witter has not referenced the facts to those alleged in the complaint but relies on the facts this court referred to in its summary judgment ruling. Unlike plaintiffs and their attorneys, the court had the advantage of a fully briefed and extensively argued summary judgment motion which referenced evidence developed by both sides after extensive discovery.

■ Additionally, as will be detailed in this opinion, the court's ruling turned substantially on the determination that plaintiffs' evidence was too thin to allow a jury to find in favor of plaintiffs on necessary factual issues. Plaintiffs did not fail to offer *any* evidence in support of the factual issues determined adversely to them, but failed to overcome the overwhelming weight of the evidence against their arguments. This opposing evidence mustered by Dean Witter has not been shown to have been available to plaintiffs in the exercise of a reasonable pre-filing investigation. The court reaches this conclusion after a thorough review of the voluminous material submitted by both sides in support of their positions concerning summary judgment. Contrary to Dean Witter's assertions, with the exception of two counts discussed later in this opinion, plaintiffs' deposition and documents did not conclu-

sively establish the facts which resulted in summary judgment in Dean Witter's favor. Much of the facts relied upon by the court were not necessarily available to plaintiffs prior to filing and commencement of discovery in that they related to Dean Witter's relationship with its employees, Kenning and Carpenter, and such facts were ultimately established by the deposition and affidavit statements of Dean Witter employees as well as the depositions of Kenning and Carpenter. This evidence overwhelmed plaintiffs' submissions of evidence. Dean Witter's attempt to charge plaintiffs with knowledge of all the facts which ultimately led the court to rule against plaintiffs is unconvincing. The court, as discussed below, finds that plaintiffs and their attorneys made an objectively reasonable inquiry into the complicated facts and relevant law underlying the complaints filed.

The court will address Dean Witter's specific arguments in support of sanctions. *See Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750 (7th Cir.1988) (a district court must specifically address each of defendant's claims for sanctions).

*Respondeat Superior/Actual Authority*

Dean Witter argues that the facts and circumstances discussed in the court's summary judgment ruling show that no rational person could have believed that Kenning and Carpenter had the actual authority to enter into the bond deal transaction as proposed and therefore, pursuing such a theory was frivolous. Dean Witter's argument fails because the reason the court rejected plaintiffs' theory was that, in fact, Dean Witter prohibited employees from commingling funds of customers with their own funds or using a customer's funds to make purchases out of employee accounts. *Harrison v. Dean Witter Reynolds, Inc.,* 715 F.Supp. 1425, 1430 (N.D.Ill.1989). The depositions of Harrison, Kenning and Carpenter do not establish that plaintiffs were told Kenning and Carpenter lacked actual authority to execute the bond deal as proposed to Harrison. Nor is it clear what exactly Harrison was told by Kenning and Carpenter as to their actual authority to

enter into the bond deal as proposed when they finally told Harrison they had lost all his money in speculative options trading. On the record before the court, it is objectively unreasonable to charge plaintiffs with pre-filing knowledge of the true facts concerning Kenning's and Carpenter's actual authority.

Similarly, Dean Witter's argument that plaintiffs knew all the facts which led the court to rule against plaintiffs on a "scope of employment" theory of actual authority is without merit. *See* 715 F.Supp. at 1430–1431. While agreeing with plaintiffs that a jury could find that the actions of Kenning and Carpenter as proposed to Harrison were of the kind they were hired to perform, the court found plaintiffs could not sufficiently prove: (1) that the acts occurred substantially within the authorized time and space limits and (2) were activated, at least in part, by a purpose to serve the master. *Id.* at 1430. In finding against plaintiffs, the court relied in part on Kenning's and Carpenter's actions to intentionally avoid Dean Witter's oversight by carrying on their relationship with Harrison primarily outside the office. *Id.* at 1431. Harrison, contrary to Dean Witter's assertions in its summary judgment motion and motion for sanctions, did not state that he intended or knew Kenning and Carpenter intended to conceal the transaction from Dean Witter. Harrison's deposition statements explain that Harrison believed he could have sent his money to Kenning and Carpenter at the office. Again, key facts which allowed the court to rule in Dean Witter's favor have not been shown to have been subject to discovery by plaintiffs through objectively reasonable pre-filing inquiry.

As to whether Kenning and Carpenter were actuated in part by a purpose to serve Dean Witter, the court again relied upon Kenning's and Carpenter's intentions, as they were at issue, and found evidence on the issue conclusively outweighed for purposes of summary judgment the fact Dean Witter received commissions out of the transactions Kenning and Carpenter actually executed. *Id.* at 1431.

### Apparent Authority

Defendant argues that plaintiffs admitted they never undertook any steps to inquire about Kenning's and Carpenter's authority after being confronted with numerous facts indicating the unusual and extraordinary nature of the transaction. *See Id.* at 1431–1431. However, the court relied on the fact no reasonable jury could find plaintiffs' reliance on Kenning's and Carpenter's representations to be reasonable after notice of the irregular nature of the transaction and such notice gave rise to an obligation to inquire beyond Kenning and Carpenter. Plaintiffs' admitted failure to so inquire prevented recovery on this theory. Again, while Harrison's belief that he was a Dean Witter customer is open to serious question, *Id.* at 1432, the court's ruling turned on the determination that any such belief was unreasonable as a matter of law. Normally, the reasonableness of a party's beliefs or actions is for the jury. The court finds that although plaintiffs' facts and legal arguments as to apparent authority were insufficient to avoid summary judgment such a claim was not objectively unreasonable at the time of filing the complaint.

### Direct Liability Claims/Negligence

Dean Witter argues that plaintiffs' negligence claim lacked any objectively reasonable basis in fact and law because plaintiffs were aware of the facts that established as a matter of law that Dean Witter owed no duty to plaintiffs. *See Id.* at 1435–1436. The court, in its summary judgment, ruling found sufficient evidence to raise a question of fact as to whether Dean Witter should have known that Kenning and Carpenter were wrongfully obtaining funds from outside sources. *Id.* at 1435. However, foreseeability of harm does not in itself create a duty on the part of Dean Witter to protect another from the actions of its employees. *Id.* at 1435. Dean Witter's duty to plaintiffs depended upon either: (1) Dean Witter's relationships with its employees, Kenning and Carpenter, or (2) Dean Witter's relationship with plaintiffs. *Id.* at 1435. Plaintiffs did not specifically argue duty based upon these relationships but argued that Dean Witter owed a duty to the investing public that Dean Witter employees were hired to solicit. Plaintiffs argued that Dean Witter "blithely assisted in the loss of millions of dollars in one of its account executive's accounts, with full knowledge that the account executive did not himself have any substantial assets or make any significant income. Yet it [Dean Witter] made no inquiry except to see that the losses were covered promptly. If Dean Witter has no duty to protect the public from its employees when it knew what its officers here knew, then there is no hope for the marketplace. Brokers such as Dean Witter have a duty to protect public investors." Plaintiffs argued that a minimal inquiry by the Dean Witter supervisory personnel pursuant to Dean Witter procedures would have revealed Carpenter's and Kenning's fraud which plaintiffs argue was perpetrated by Dean Witter salesman against victims who believed they were customers of Dean Witter.

Plaintiffs' duty argument was legally weak, yet not unsupported by facts. Plaintiffs did argue that in light of Dean Witter's notice of Kenning's and Carpenter's huge losses, Dean Witter should be charged with a duty to protect the investing public from the wrongful acts of its employees who are hired to solicit the investing public. This argument, though not accepted by the court was not objectively unreasonable, nor was pleading this count sanctionable under the circumstances of this case.

### Section 20(a)

The court rejected plaintiffs' section 20(a) claim because Dean Witter is not a "controlling person" as to its employees' acts which take place outside of the employer's property and which involve the personal affairs of the employees. *Id.* at 1437–1438. Dean Witter argues that the same reasons plaintiffs should be sanctioned for pursuing their vicarious liability claims support sanctions for pursuing a section 20(a) claim. Dean Witter also argues since no reasonable jury could have

found plaintiffs' alleged belief that they were dealing with Dean Witter reasonable, pursuing this claim was objectively unreasonable.

Plaintiffs, although they lost this argument at the summary judgment stage, did present facts and appropriate legal authority for their position. Plaintiffs' complaint alleged sufficient facts to state a claim under recognized principals of the law concerning "controlling persons" liability under section 20(a). The court does not find pursuit of this claim on the facts and circumstances of this case to have been objectively unreasonable at the time plaintiffs filed their complaint. Although the court concluded that Harrison's belief that he was dealing with Dean Witter was unreasonable, the court's ruling on plaintiffs' section 20(a) count turned upon Dean Witter's lack of control over the personal affairs of its employees. Rule 11 is not designed to deter the filing of colorable claims but only to deter frivolous claims that could have been determined to be frivolous upon reasonable inquiry into the facts and the applicable law.

### Claim under § 1962(c) of RICO

■ Dean Witter's arguments for sanctions as to plaintiffs' pursuit of a § 1962(c) RICO claim fair much better. This court dismissed plaintiffs' § 1962(c) claim because plaintiffs failed to allege separate entities as the liable person and the enterprise. *See Haroco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 400–402 (7th Cir.1984). Plaintiffs argue that since they timely and honestly conceded dismissal on the count they should not be sanctioned.

In some situations of rapidly developing law, a failure to be aware of controlling authority which directly defeats a cause of action may not be objectively unreasonable. No such situation exists here. After plaintiffs filed their original complaint, Dean Witter filed a motion to dismiss which included plaintiffs' claim under § 1962(c). Dean Witter cited *Haroco* and argued the same grounds relied upon by the court in dismissing plaintiffs' § 1962(c) claim of the

First Amended Complaint. However, plaintiffs having been given notice of this defect in their pleading, proceeded to file the First Amended Complaint which suffered the exact same problem of failing to allege separate and distinct entities as the enterprise and liable person.

Upon Dean Witter's motion to dismiss the § 1962(c) count of plaintiffs' First Amended Complaint based upon *Haroco*, this court granted dismissal. Pursuit of this claim, in light of notice of controlling legal authority was objectively unreasonable and not a timely concession of a mistake in interpreting relevant law. An attorney cannot continue to pursue a claim with knowledge of adverse legal authority and then concede the issue and thereby avoid Rule 11 sanctions. Plaintiffs' attorneys' action in pursuing this claim in light of *Haroco* and after Dean Witter had given notice to plaintiffs of the legal defect in plaintiffs' claim was objectively unreasonable. Plaintiffs' attorneys violated Rule 11 by including this § 1962(c) claim in plaintiffs' First Amended Complaint.

### Claim on Promissory Notes

■ Dean Witter contends that on objectively reasonable inquiry into the law applicable to suits on promissory notes would have revealed that plaintiffs could not recover against Dean Witter on promissory notes that did not name Dean Witter as a promissor and were not signed by Dean Witter or signed on behalf of Dean Witter. *See* Uniform Commercial Code—Commercial Paper, Ill.Rev.Stat. ch. 26, par. 3–401 (Smith–Hurd 1963); *See also, Fidelity Federal Savings & Loan Association v. Pioneer National Title Insurance Co.*, 428 F.Supp. 1382 (S.D.Ill.1977). Plaintiffs conceded summary judgment on Count V which sought to hold Dean Witter liable for defaults on approximately three million dollars in promissory notes. Plaintiffs contend that sanctions are inappropriate because they cited a case in support of holding a party liable on a note they did not sign. *See In re Maloney's Estate*, 296 Ill.App. 179, 15 N.E.2d 932 (1st Dist.1938).

Section 3–401(1) of the Uniform Commercial Code provides: "No person is liable on an instrument unless his signature appears thereon." Ill.Rev.Stat. ch. 26, par. 3–401(1) (Smith–Hurd 1963). It had to be obvious to plaintiffs and plaintiffs' attorneys that Dean Witter's signature was not on any of the notes and neither Kenning's or Carpenter's signature indicates that they signed in the capacity of an agent or on behalf of Dean Witter. The one case relied upon by plaintiffs, *In re Maloney's Estate,* is cited in the Illinois Code Comment to section 3–401 for the proposition that "Apart from liability on the note, an undisclosed principal who received the proceeds from a loan has been held liable for a deficiency". However, as the comment indicates liability was not based upon the instrument. *In re Maloney's Estate* was decided upon the authority of *Bride v. Stormer,* 368 Ill. 524, 15 N.E.2d 282 (1938). This fact was also indicated in the Illinois Code Comments as well as in the *In re Maloney's Estate* case itself. The Illinois Supreme Court made it clear that liability in *Bride v. Stormer* was not based in law upon the instrument itself but in equity for money had and received. *See* 368 Ill. at 533–536, 15 N.E.2d 282. The court in *Bride v. Stormer* clearly explained that the action was not on the instrument itself and for that reason section 8 of the Negotiable Instruments Act, Ill.Rev.Stat. 1937, ch. 98, § 38, the predecessor to section 3–401 of the Uniform Commercial Code, did not apply to defeat the plaintiffs' recovery. *Id.*

A simple reading of the Illinois Code Comment or *Bride v. Stormer* cited therein would have revealed that *In re Maloney's Estate* does not support Count V of plaintiffs' complaint which sought to hold Dean Witter liable on promissory notes it did not sign. Plaintiffs in response to Dean Witter's motions for sanctions, do not even attempt to discuss *In re Maloney's Estate,* but merely cite the case and state sanctions are inappropriate. Plaintiffs are incorrect. A reasonable inquiry into the case law would have revealed the inappropriateness of Count V as pled by plaintiffs. Plaintiffs' attorneys have not offered any legal arguments in support of Count V other than a mere citation to one case which does not support Count V. These actions are objectively unreasonable and insufficient to avoid an appropriate sanction under Rule 11 for pleading a frivolous count.

### Improper Purpose

■ Dean Witter argues that pursuit of twelve frivolous claims combined with objective evidence of bad faith supports a finding that the suit was brought for an improper purpose in violation of Rule 11 and also supports a finding of vexatious and unreasonable conduct in violation of 28 U.S.C. § 1927. *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 752 (7th Cir. 1988) (Rule 11); *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226–227 (7th Cir.1984). Dean Witter additionally relies on Harrison's federal tax treatment of the losses he sustained in his transactions with Kenning and Carpenter and the fact that plaintiffs certified in their 1985 and 1986 tax returns that there was "no reasonable prospect of recovery" in order to deduct their losses from the transactions. *See* Internal Revenue Code Regulation 1.165(d)(3). Dean Witter relies on *Scofield's Estate v. Commissioner of Internal Revenue,* 266 F.2d 154 (6th Cir.1959), to argue that plaintiffs' assertion in filing tax returns in 1985 and 1986, which deducted the losses at issue in this litigation, that there was "no reasonable prospect of recovery" establishes that plaintiffs' suit to recover such losses was meritless and pursued for improper purposes. Further, Dean Witter argues that plaintiffs' attorneys knew of this assertion by plaintiffs and, therefore, participated in pursuit of plaintiffs' frivolous claims in a vexatious and unreasonable manner.

First, Dean Witter's argument relies on its belief that all twelve claims were frivolous when in fact as determined by the court, only two of plaintiffs' claims were frivolous in light of the facts and law. Second, exactly what plaintiffs' attorneys knew about this loss deduction is not clear. While plaintiffs' accountant did discuss the "no reasonable prospect of recovery" rule with one of plaintiffs' attorneys, Mr.

Ruark, exactly what was discussed is not disclosed. Nor is it clear what Dean Witter told Mr. Ward, plaintiffs' other attorney. Lastly, the *Scofield* case, *Id.*, cited by Dean Witter does not necessarily equate "no reasonable prospect of recovery" with "frivolous" or "meritless" claims. The court in *Scofield* did not hold that a taxpayer could not take a loss when the taxpayer had also filed a suit to recover for the loss. *Id.* at 159, 160. *Scofield* involved a taxpayer who waited thirteen years until the suit was determined adversely to his interests before declaring the loss. 266 F.2d 154. The court reversed the Tax Court's determination that the taxpayer's delay in claiming the loss was unreasonable. *Id.* The fact that a suit is pending is not the sole or determinative issue nor does it necessarily prevent the deduction from being taken before the suit is concluded. *Id.* On the record before it, the court does not find that plaintiffs or their attorneys violated Rule 11 or 28 U.S.C. § 1927 in filing of the complaints naming Dean Witter as a defendant.

Dean Witter is directed to submit appropriate proof of the costs, expenses and attorneys' fees reasonably incurred by it as a result of the violations of Rule 11 discussed by the court in this opinion. Any sanction ordered will be against plaintiffs' attorney, Thomas P. Ward, the attorney who signed plaintiffs' First Amended Complaint. The court does not choose to sanction plaintiffs because there seems little value or deterrence in sanctioning a party for an attorney's failure to reasonably investigate the law. *Henry v. Farmer City State Bank*, 127 F.R.D. 154 (C.D.Ill.1989).

ORDERED: Defendant's motion for sanctions is denied in part and granted in part. Defendants are granted leave to file a petition for fees and supporting material by July 13, 1990. Plaintiffs' attorney, Thomas P. Ward, is given until July 27, 1990 to respond to the items claimed by Dean Witter. A reply, if any, is due August 3, 1990.