(No. 24481.
NICHOLAS BRIDE *et al.* Appellants, *vs.* JOSEPH W. STORMER *et al.* Appellees.

*Opinion filed April 15, 1938—Rehearing denied June 8, 1938.*

ERNEST J. HENDERSON, ORMAN RIDGELY, NATHAN WEISS, and C. R. BIRKETT, for appellants.

C. L. CONDER, and GEORGE W. HUNT, for appellees, Henry Denhart & Co., and its receiver.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

The appellants in this foreclosure suit sought to obtain a deficiency decree against the receiver of Henry Denhart & Company, a defunct State bank. The circuit court of Lee county, by its foreclosure decree of November 19, 1936, dismissed the bill for want of equity, as to the receiver, and, on December 29, 1936, rendered a deficiency

decree against Joseph W. Stormer, alone, the maker of the notes and trust deed. The Appellate Court for the Second District affirmed the circuit court's decree and the cause is here by leave granted to appeal.

There is no dispute as to appellants' right to foreclose. The land is located in Lee county but the bank was located in Tazewell county, and the receiver appointed by the Auditor of Public Accounts had applied to the circuit court of Tazewell county for its assistance in the liquidation of the bank. One of his contentions is that he could not be sued elsewhere than in the circuit court of Tazewell county.

In *Heiple* v. *Lehman*, 358 Ill. 222, a former receiver of the same bank had taken judgment in the circuit court of Woodford county against the two makers of a note. They were granted leave to plead and we affirmed a judgment in favor of one of them, which judgment had been ordered paid in the due course of liquidation. We overruled the receiver's contention that the circuit court of Woodford county lacked jurisdiction to render a judgment on the claim set off against the note, and that the defendant should have been compelled to file her claim in the Tazewell county circuit court. The receiver was appointed by the Auditor of Public Accounts under the Banking act. (Ill. Rev. Stat. 1937, chap. 16½, sec. 11.) The foreclosure suit in the present case was required to be brought in the county where the land is located, and since the receiver was not appointed by any court, and the statute gives him the right to sue and defend, it was proper to make him a defendant in the foreclosure suit in Lee county without the consent of any court. This contention must be overruled.

The appellees contend that the foreclosure decree, rendered November 19, 1936, was final and appealable. It dismissed the bill, as against the receiver of the bank, for want of equity. The decree determining the deficiency and ordering execution to issue against Stormer was rendered December 29, 1936, and the appellants' notice of appeal was

filed on March 12, 1937. The general rule is that a decree dismissing a bill or complaint for want of equity, as to one or more defendants, is not final and cannot be appealed from on that ground until there has been a final disposition of the cause as to the remaining defendants, except where great hardship or injustice would be occasioned by a denial of such an appeal. (*People* v. *Banks,* 285 Ill. 137, 140; *Sheaff* v. *Spindler,* 339 id. 540, 549; *Free* v. *Successful Merchant,* 342 id. 27, 30.) The decree of November 19, 1936, could not determine ultimately the question of a deficiency. It could not then have been determined that appellants would ever have a right to a deficiency decree. This would depend on what occurred at the sale and nothing final could be done with reference to a deficiency until the coming in and confirmation of the master's report of sale. An appeal based on the ground that the chancellor had found that the receiver was not liable for a deficiency, in the decree of November 19, 1936, would have been premature.

In this connection, section 74 (1) of the Civil Practice act, (Ill. Rev. Stat. 1937, chap. 110, p. 2407,) provides that: "Every order, determination, decision, judgment or decree, rendered in any civil proceeding, if reviewable by the Supreme or Appellate Court of this State by writ of error, appeal or otherwise, shall hereafter be subject to review by notice of appeal, and such review shall be designated an appeal and shall constitute a continuation of the proceeding in the court below." Under the earlier practice, a decree determining the rights of the parties was not subject to review in an appeal from a subsequent decree in the same suit, which did not involve those rights; but a writ of error, sued out after the later decree was rendered, could be made use of to review the entire record, including the earlier decree. (*Drummer Creek Drainage District* v. *Roth,* 244 Ill. 68, 72.) In that case we held: "While this court has held that in partition proceedings the decree which finally adjudicated the rights and interests of the parties could not

be reviewed on appeal from a later decree in the same proceeding which did not affect such interests of the parties, (*Crowe* v. *Kennedy,* 224 Ill. 526; *Piper* v. *Piper,* 231 id. 75;) we have also permitted, in partition proceedings, the original decree fixing the rights of the parties and a later decree taxing costs against certain of the parties to be reviewed by one writ of error.—*Smith* v. *Roath,* 238 Ill. 247."

Appellants could have reviewed both these decrees by a single writ of error before the adoption of the Civil Practice act, and now, in view of section 74 (1), *supra,* both decrees may be reviewed by one appeal. The contention that the notice of appeal filed March 12, 1937, could not include the decree of November 19, 1936, cannot be sustained.

Originally, Henry Denhart & Company was a private bank, but after it had operated from 1866 to 1920 it was incorporated as a State bank. It was closed on April 11, 1930. The appellee, Joseph W. Stormer, began work at the bank in 1908 and was made assistant cashier in 1921, and was so employed when the bank closed. In 1919, George T. Harland owned the land involved in this suit and obtained a mortgage loan of $9000 from the private bank of Henry Denhart & Company. After the bank was incorporated the two customers who held the $5000 and $4000 Harland notes and interest coupon notes, received from the bank the money due on the interest notes. In 1923, Henry Denhart, trustee, acting for the bank, filed a suit to foreclose the Harland trust deed. He alleged in his bill of complaint that the bank was the owner of all the Harland notes and the decree found this to be the fact. At the close of the period of redemption, the land was sold; that master's certificate of indebtedness was surrendered; Henry ·Denhart, trustee, receipted for $7830; a deficiency decree was rendered against George T. Harland, and the land was deeded by the master in chancery to Joseph W. Stormer, February 28, 1925. Stormer's testimony is not disputed that he knew nothing about this until later, and that he had authorized

no one to bid at the sale for him. He paid no part of the purchase price.

Before using the certificate of indebtedness, issued by the master at the beginning of the period of redemption, in the purchase of the land at the foreclosure sale in February, 1925, the bank paid its two customers the amounts due on their $4000 and $5000 notes mentioned above, and entered these notes on its books as bills receivable. Two years later, one of these customers, George Birkett, bought from the bank one of the notes involved in the foreclosure suit before us.

On March 5, 1925, Joseph W. Stormer and wife executed a trust deed of the same land securing payment of notes for $12,000. These notes were carried on the bank's books as bills receivable until sold by it to customers, and it, alone, received the proceeds of the loan. Stormer and wife also executed a warranty deed to the mortgaged land, with the grantee's name omitted, and delivered that deed to the bank. These transactions were at the request of the cashier, H. A. Kingsbury. The bank paid the interest on the Stormer notes, and its agent in Lee county had charge of the mortgaged land, collected the rents, paid the taxes and made the repairs from the time Stormer acquired the legal title until the bank was closed.

Appellants introduced in evidence the minutes of the meeting of the board of directors of the bank, held in 1923, authorizing the foreclosure of certain Lee county mortgages, including the Harland trust deed. They also introduced minutes of meetings of that board held in February and March, 1925, which contain a general discussion of the making of the new Stormer trust deeds and notes and a resulting improved condition in the bank's bills receivable account. The receiver offered in evidence part of the files in four other foreclosure proceedings in Lee county showing that the bank had made four other Lee county loans about the same time it made the Harland loan, and that it

foreclosed all five trust deeds about the same time in separate suits. The proof showed that the bank's attorney was paid by it for his services in foreclosing the Harland trust deed. Stormer testified that he had no means; that a judgment against him could not be collected, and that his financial condition had not changed from the time he made the trust deed and the notes aggregating $12,000, involved in this suit. It was alleged by the receiver that Stormer made the trust deed and notes for the three stockholders of the bank, Denhart, Kingsbury and Hops, and not for the bank. The proof shows that the bank's money was used, not the individual money of these three men, and there is no question that the bank was the person beneficially interested, rather than the three stockholders. Stormer testified that he did not know for whom he was executing the trust deed and notes. He said the bank's officers told him they would sell the land within a year, and, later, that they would try to dispose of it in order to free him from his obligations.

The appellees, in their argument, admit that Henry Denhart testified in the first foreclosure suit that the Harland notes belonged to the bank, but say that this was untrue. They say that, except for the testimony of Stormer, there is nothing in the record before us to indicate that the report of sale in the Harland foreclosure was false, or that the bid was not made by Stormer in person, or who made the arrangements upon which the master in chancery acted, or who was present on the day of the sale in that foreclosure. The answer to this is Stormer's uncontradicted testimony and the proof contained in the books of the bank. While it appears that Henry Denhart, trustee, receipted the master for $7830, and paid the master $170 costs, Stormer, thereafter, at the request of officers of the bank, executed the $12,000 in notes and the new trust deed as well as the warranty deed to the land above referred to. This deed was produced from the bank's effects by the receiver at the trial of this case.

The appellees also point out that although the Harland principal notes and interest notes had merged in the decree for foreclosure, two days before the sale was made in 1925, the two principal notes, one for $4000 and the other for $5000, were entered as bills receivable on the bank's books. However, they contend that there is nothing to show that the customers who had owned these notes, George Birkett and Ella Burchard, knew anything about these transactions or had ever authorized such entries to be made. Appellees then admit that the books show that Birkett's checking account received a credit of $4000 principal and $200 interest, and there was issued to Ella Burchard a demand certificate for $5000, and her savings account was credited with $250 interest. There was also entered in the interest account of the bank, for the use of the bank, a credit of $45. Appellees say these were mere bookkeeping entries and that they do not show that any money actually changed hands. Perhaps no actual currency passed from the bank to Birkett, but we have already pointed out that he did not receive any of the new notes made by Stormer until he bought one from the bank two years later. We are convinced that these items on the books of the bank, coupled with the other testimony and documentary evidence, show conclusively that the bank was the owner of the Harland notes, or rather the master's certificate of indebtedness, when Henry Denhart, trustee, receipted the master in chancery, and that Stormer took title to the land, by the master's deed, for the bank. We are also convinced that the proof fully demonstrates that Stormer made the trust deed and $12,000 worth of notes for the bank.

Appellee says that payment must be coincident with purchase and transfer of title to give rise to a resulting trust, and cites *Kinsch* v. *Kinsch,* 348 Ill. 446. Henry Denhart paid, using the bank's certificate of indebtedness, and, at the same time, the master, regardless of who it was that told him to do so, transferred the land by deed to Stormer

who paid nothing. The requirements of the rule were thus satisfied and the Statute of Frauds has no application to the resulting trust. The Harland principal and interest notes had not been retained by the master but were in the possession of the bank, just as the Adam Smith notes were retained by the bank in the case of *Libby* v. *Union Nat. Bank,* 99 Ill. 622, to aid that bank in concealing the fact that it had acquired title to certain real estate. In that case Coolbaugh, the president of the bank, had given his own note and there was no record of the transaction on the books of the bank to show that it was, in fact, the purchaser, but we held, at page 635: "This testimony seems to be abundant to show that this transaction with Libby was a transaction for the bank, although transacted in form in the name of Coolbaugh." And, further, at page 639: "In an examination of all the proven facts in this case, they can all be reconciled with each other on the theory that this purchase from Libby was by the bank and for the bank, and they cannot be reconciled upon any other hypothesis which has been suggested or which has occurred to us. * * * It seems to us plain that the bank, in truth, was the purchaser, and as such should pay the unpaid part of the purchase money, and that the estate of Coolbaugh should be held liable only as a security for the bank."

On the same equitable principles, the bank was held liable in *Chemical Nat. Bank* v. *City Bank of Portage,* 156 Ill. 149. In that case the cashier of the defendant bank had given his own note for $5000 with shares of stock in the bank, furnished to him by it, as collateral. At page 152 we said: "It is, however, claimed in the argument that the plaintiff was not entitled to recover against the defendant, the Chemical National Bank on the note executed by Braden. Whether a recovery could be had, on the instrument set out in the declaration, against the Chemical National Bank as an unnamed principal we shall not stop to inquire, as the case may properly be disposed of on other

grounds. As before observed, the declaration contained the common counts, and if it were conceded, which it is not, that the defendant was not liable on the note, no reason is perceived why an action for money had and received could not be maintained. As was held in *Laflin* v. *Howe*, 112 Ill. 253, *indebitatus assumpsit* for money had and received is an equitable action, and lies where one party has obtained money which, in equity and good conscience, he ought not to be permitted to retain. (See, also, *Barnes* v. *Johnson*, 84 Ill. 95.) Here the Chemical National Bank received from the plaintiff $5000, which it agreed to pay. Braden, who signed the note, had no interest in the transaction. Wetmore had no interest. He acted merely as an agent in procuring the loan for the defendant, and transferred the note over to the plaintiff without recourse, and passed the money which the note represented, from the plaintiff to the defendant. That money is still in the hands of the defendant. It is the party liable to pay the money and the City Bank of Portage is the party entitled to receive the money; and in an action for money had and received we see no reason why the plaintiff may not surrender the note in court and recover a judgment for the amount of the money.

"It is, however, contended in the argument that a recovery cannot be had on the common counts for the reason that the money was borrowed in furtherance of a transaction which, if engaged in by defendant, would be illegal. * * * If the facts were as claimed by counsel, they would not defeat a recovery on the part of plaintiff. The purchase of the stock and the borrowing of the money from plaintiff were two distinct transactions. * * * So far as appears from the evidence there was nothing illegal in the transaction between plaintiff and defendant which resulted in the loan of $5000."

Under these authorities the bank, which was the real party in interest, was liable to appellants. See, also, *Gage* v. *Cameron*, 212 Ill. 146.

The appellees cite Restatement, Trusts, sec. 456, pp. 1389, 1394, as follows: "f. Purchase on Mortgage. Where property is sold and a part of the purchase price is paid in cash by a person other than the transferee and the balance is secured by a purchase-money mortgage on the property, the fact that the transferee executed the mortgage and incurs an obligation to the vendor for the balance of the purchase price does not of itself entitle him to a beneficial interest in the property. In such a case the inference is that the other person, who is the real purchaser, undertakes to exonerate the transferee from any liability to pay the vendor the deficiency if on foreclosure of the mortgage the property should be insufficient for the payment of the balance of the purchase price. The result is the same where property subject to a pre-existing mortgage is purchased subject to the mortgage, although the transferee assumes the mortgage debt." This was in connection with the contention that although no such finding was made by the chancellor in the decree, by his action in sustaining exceptions to the master's report, he, in effect, held that the three stockholders of the bank were the real parties in interest, and the further contention that Stormer's testimony showed this to be the fact. Stormer's testimony does not show this and his answer states that he did not know whether he held title for the three stockholders or for the bank but that he was willing to convey the land to anyone who was found to be the real owner.

There was unquestionably a resulting trust created the instant Stormer received title to this land, and since the proof is that the bank's money was used in payment when Henry Denhart surrendered the certificate of indebtedness and receipted the master, it, and not the individual stockholders, was the person beneficially interested.

In *Mercury Club* v. *Keillen*, 323 Ill. 24, we said: "While neither an express nor a resulting trust can be created by

parol agreement, yet where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of such parol agreement, such agreement will not prevent a trust resulting, (*Smith* v. *Smith*, 85 Ill. 189; *Wallace* v. *Carpenter*, id. 590; *Williams* v. *Brown*, 14 id. 200;) and the intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken.—*Furber* v. *Page*, 143 Ill. 622." That decision also answers the contention of the appellees that proof cannot be made of a resulting trust, because they say the bill alleged an express trust. While the bill does contain surplusage, sufficient facts are alleged to show that when Stormer took the title a resulting trust was created.

All that it is necessary to say in response to the contention that the bank had no power to engage in the transaction before us, and that it, therefore, was *ultra vires,* is that the bank had the power to take title to real estate, to borrow money and to convey the real estate away. There was nothing illegal in the transactions between the appellants and the bank, regardless of the bank's dealings with Stormer. The bank got and retained the money paid to it for notes, and, in equity, it is bound to pay whatever remains unpaid thereon after the sale of the mortgaged land. It cannot set up its claim that there may have been an *ultra vires* act committed when it procured Stormer to execute the trust deed and notes to defeat the right of the appellants to collect the money due them on notes they purchased from the bank. *Chemical Nat. Bank* v. *City Bank of Portage, supra.*

The Negotiable Instruments act has no application to this foreclosure suit, for the reason that this is not a suit at law on the notes against an accommodation maker. Appellees rely also on our holdings in *People* v. *Wiersema State Bank,* 361 Ill. 75, and *Knass* v. *Madison and Kedzie Bank,* 354 id. 554, but those cases are not in point, because neither a pledge of assets, nor a repurchase agreement is involved here.

The bank had the power to make the notes and mortgage, and the device resorted to does not create an illegal preference in favor of appellants.

It follows that the chancellor erred in dismissing the bill of complaint against the receiver for want of equity, and in failing to enter a deficiency decree against him to be paid in due course of the liquidation of the bank.

For the reasons stated the judgment of the Appellate Court and the decrees of the circuit court are reversed and the cause is remanded to the latter court, with directions to enter a deficiency decree against the receiver, to be paid in due course of liquidation of the bank.

*Reversed and remanded, with directions.*