F. W. B. Reynolds et al., Appellees, v. Elmer H. Wangelin et al., Defendants, Illinois State Trust Company, Appellant.

February term, 1944. 1944. — Heard in this court at the Opinion filed February 28, 1944.

Pope & Driemeyer, of East St. Louis, for appellant.

T. A. O'Connor, of East St. Louis, and John R. Sprague, of Belleville, for appellees.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of St. Clair county, Illinois, entered as against the appellant, Illinois State Trust Company (hereinafter referred to as defendant Company), and in favor of certain noteholders named as appellees herein (hereinafter referred to as plaintiffs), which noteholders and the specific amounts of the judgments were as follows:

| | |
|---|---|
| Mary Weissert | $1,948.87 |
| Anna E. Mehring | 649.56 |
| Arthur Knewitz | 649.56 |
| George Huggler | 649.56 |
| Anna L. Popkess or E. G. Popkess | 2,598.42 |
| Florence Collins or Elizabeth Collins | 649.56 |
| Gothic Lodge No. 852, A. F. & A. M. | 3,248.20 |
| Dupo State Savings Bank | 1,299.31 |
| John Van Dyke | 1,299.31 |
| Jasper Rountree or Ada Rountree | 1,299.31 |
| Richard Grady | 2,598.62 |
| F. W. B. Reynolds | 1,299.31 |
| W. T. Crotty | 1,299.31 |
| Mrs. Lou Jimmerson | 1,299.31 |
| Charles Young | 2,598.62' |

As was indicated in this court in a previous opinion rendered on a premature appeal in this case (*Reynolds v. Wangelin,* 314 Ill. App. 12), the appeal in this case is from a decree in a foreclosure action, in which decree the court, in addition to ordering a sale of the mortgaged real estate, found the defendant, Illinois State Trust Company, guilty of fraud, and as a consequence thereof, liable to the certain specified noteholders for the amount of the deficiency which was found to be due to such noteholders after the sale of the mortgaged property and an application of the proceeds thereof upon the decree indebtedness. As was true in the previous appeal, the Trust Company is the only party

appealing from the decree and it does not question any provision of the decree relating to the simple foreclosure, but directs all assignments of error to the portions of the decree which seek to impose a liability upon the Trust Company to pay the amount of the deficiency which was found to be due after the sale. It is noted that the net deficiency due from the Illinois State Trust Company totals $23,386.83.

The original complaint in this case was filed on August 31, 1933, by Reynolds, as the sole plaintiff, and with defendant Elmer H. Wangelin and his wife, as defendants, and joining the defendant Illinois State Trust Company, as trustee under the real estate mortgage. The action was for a simple foreclosure of the real estate mortgage, which was dated September 1, 1931, and secured 55 principal notes of the same date, aggregating $45,000. The complaint was filed on behalf of the plaintiff and other noteholders. An order was entered on September 15, 1933, appointing a receiver and the proceeding then remained dormant for four years. On July 2, 1937 two other noteholders obtained leave of court to become parties plaintiff and filed their complaints, which were also confined to the simple foreclosure issue. On July 13, 1937, five other noteholders obtained leave of court to become plaintiffs, and on July 19, 1937 filed their complaint in the action, which added the Illinois State Trust Company, individually, as a party defendant, and averred that the real estate conveyed under the mortgage was in reality owned by the Trust Company; that defendant Wangelin was its "straw man" in executing the mortgage, and that the five additional plaintiffs had purchased their notes from the Trust Company "after September 10, 1931," and that the Trust Company was guilty of fraud in selling these notes to such additional plaintiffs in that it (1) falsely represented that the real estate was ample security when, as a matter of fact, it was not; and (2) promised to repurchase the

notes at any time, which it refused to do. The answer of the Trust Company denied such allegations. On January 14, 1938, the original plaintiff filed an amended complaint, making identical averments as to fraud and the repurchase agreement, and on the same date, all of the additional plaintiffs, as well as all other plaintiffs, amended their complaints by adopting and paraphrasing the complaint of plaintiffs filed on July 19, 1937, relating to false representations and the repurchase promise. These plaintiffs, likewise, joined certain other parties defendant, who filed answers herein. The answers of the Trust Company to each of the complaints admitted matters concerning simple foreclosure, but specifically denied the ownership of the property, the contended circumstances of the sale of the notes, and, likewise, denied the charges of fraud and the repurchase agreements. On January 27, 1939 the Trust Company filed amendments to its answers, raising as to each of the complaints filed the defenses of (1) statute of limitations, in that the causes of action set forth in the additional and amended complaints did not accrue within five years of the commencement of the actions; (2) of the statute of frauds and lack of consideration as to the alleged repurchase agreements; and (3) *ultra vires* as to the repurchase agreements. Further replies to such answers were thereafter filed, placing in issue the affirmative defenses and alleging that the Trust Company occupied a fiduciary relationship to plaintiffs and failed to disclose the real situation, and that the facts were not discovered by the plaintiffs until the time the amended and additional complaints were filed. The case was referred to the master in chancery and proofs were taken upon the issues thus formed.

The facts, as disclosed by the evidence, indicate that prior to March 16, 1931, one Bertie Wilson was the owner of nineteen pieces of real estate in East St. Louis, upon which there were separate first mortgages

aggregating $35,700 in all. The gross rentals averaged $8,800 per year, and these rentals had been collected by the Trust Company for a period of several years, and regular monthly accountings had been made to Wilson. In 1930 Wilson expended $5,000 in repairing and renovating the properties (about $200 or $250 per house). In the spring of 1931 Wilson discovered that his associates had become involved in some questionable deals and had forged his name, and his wife's name, to some papers, and that .they were about to become involved in litigation. He discussed the matter with his attorney and as it was necessary to arrange some refinancing of some of the nineteen mortgages, which were about to mature, he went to Mr. Baltz, then vice president of the Trust Company (deceased prior to the taking of proofs), and discussed the entire situation. Wilson had planned to convey the record title to the property to a brother-in-law in Jacksonville to keep the property out of the threatened litigation, but Baltz, presumably, objected to this procedure because of the inconvenience occasioned by the brother-in-law being located in Jacksonville. It was then arranged that Wilson convey the nineteen parcels to the Trust Company, which he did on March 16, 1931, for which conveyance the Trust Company paid him no consideration and claimed no beneficial interest in the properties. To effect a refinancing of the mortgages it was agreed that all nineteen parcels would be put in one mortgage, thus retiring the nineteen individual mortgages and providing for payment of taxes, which had been left unpaid, to establish proper reserves for taxes and insurance, to pay off a debt owed by Wilson to the First National Bank (an affiliate of the Trust Company), and to pay other items. Baltz, Wilson and Mattingly, an employee of the Trust Company, made a survey of the properties and appraised them at $61,300. To carry into effect the plan, Wilson and his wife signed a letter to the Trust Company, advising

that they were holding a quitclaim deed to the real estate, and that for the purpose of refinancing the present mortgage indebtedness he requested that they convey the properties to Elmer H. Wangelin (this name was apparently suggested and inserted by Baltz for the purpose of carrying into effect the program), with a request that a new mortgage be executed, reconveying the properties to the Trust Company, as trustee for the new mortgage loan, as well as the indebtedness to the First National Bank. The nineteen pieces of real estate were conveyed to Wangelin, who, with his wife, executed notes aggregating $45,000, each payable to bearer, and also executed a mortgage to "Illinois State Trust Company, trustee" securing the notes. The notes and mortgage were delivered to the Trust Company, which gave Wilson credit for the amount of the notes. The mortgage was in the ordinary mortgage form, and not in the form of a trust deed, and neither by express recitals nor by implication carried with it any other description of a trust or trust relationship.

At the time the notes were made no particular persons were interested in the notes. The original nineteen mortgages, with outstanding notes of $35,700, were called in. $13,000 of such notes were exchanged for notes secured by the new mortgage, leaving a balance of $22,700 of former mortgages to be paid in cash, and $32,000 of notes of the new mortgage. $31,000 in amount of the new mortgage notes were sold, and the remaining $1,000 note was canceled. The proceeds of the $31,000 in notes of the new mortgage was used to pay off $22,700 in amount of the former mortgages which were not exchanged, and the remaining balance of $8,300 was set up "to establish proper reserves for taxes and insurance, to pay the cost incurred by Wilson in refinancing (including a small fee to the Trust Company), and to pay a small note owed by Wilson to the First National Bank." Wilson was given a detailed accounting of the entire transaction by the Trust

Company. The exchange of and sale of the new mortgage notes by the Trust Company took place on several dates between September 1 and October 31, 1931.

The evidence in the case discloses that only two plaintiffs testified as to the circumstances attending their acquisition of the notes. Plaintiff Young's testimony was simply that Mr. Baltz had said "There is no use of going to look at the property, the Bank protects you to the date of maturity and date of interest," and that Baltz said to Mr. Henderson "Give him those papers, give him something good. Any time you want your money back, come in." The plaintiff Popkess stated that he purchased his notes from Mr. Henderson, the assistant secretary of the Trust Company, and that he didn't ask as to the security; that he asked as to the responsibility or financial status of the bond; and that Henderson stated, "Any time you want your money back, bring them in and we will pay them back." There was no evidence as to any circumstances attending the sale of any notes of any other purchaser, except Young and Popkess. So far as the record discloses there may have been a full and complete disclosure by the Trust Company of every fact and circumstance attending the execution of the notes and the character and value of the security therefor, and the income from the property.

There is a conflict of testimony as to the value of the real estate in September 1931. Wilson recalled that the rentals averaged $8,800 per year, and he appraised the properties at $61,300. Two real estate dealers in East St. Louis corroborated these values and rental expectancy. The records of the Trust Company show fire insurance of $54,950, carried on the properties at the time. There was conflicting evidence by other real estate brokers which indicated a value of $40,000 or $25,000. Interest on the mortgage defaulted on March 1, 1933, and the principal debt of $44,000 matured and was unpaid on September 1, 1934.

In January of 1940, the special master in chancery filed his report, finding in favor of plaintiffs insofar as the simple foreclosure was concerned, but finding as to the other issues, (1) that the evidence was not suf-ficient to establish fraud on the part of the Trust Com-pany, in regard to the valuation of the property, bear-ing in mind that the mortgaged premises had been, prior to 1930, and were to a lesser degree on Septem-ber 1, 1931, substantial income producing properties, with a considerable margin of income above the re-quirements of interest, taxes, and maintenance of the properties, and that the economic depression had not, at that time, reached its most serious period, and that further depreciation in the value of the properties as the result of the depression, could not be fairly foretold by the Trust Company; (2) that the repurchase prom-ises made to the two plaintiffs, Young and Popkess, were beyond the legal powers of the Trust Company; and (3) that the Trust Company was not the beneficial owner of the mortgaged premises, and that while it held title to the premises, it did so for the protection of the noteholders and it had agreed, by virtue of its acceptance of the Wilson proposal contained in the letter referred to in this statement of facts, to hold the mortgaged premises as security for Wilson's indebted-ness, and that it held title to the premises as trustee for the noteholders. The master stated that he found it unnecessary, in view of such findings, to pass upon the defenses of statute of limitations, or the statute of frauds, raised by the defendant Company. After ob-jections were overruled to the master's report, plain-tiffs filed exceptions to such report, and in August of 1940, and in November of 1940, the circuit court of St. Clair county sustained exceptions to the master's re-port.

There were subsequent amendments to the complaint by the plaintiffs which it is not necessary that we de-tail for the purposes of this opinion. The amend-

ments, substantially, sought to specify the facts relating to the default, and set up fraud in the making and sale of the notes, and that plaintiffs knew nothing of this until shortly before the filing of the complaints charging fraud. By subsequent order the circuit court modified its previous order so that only those noteholders who purchased or received notes from the Trust Company were entitled to a deficiency judgment against the Trust Company. Thereafter, on June 25, 1943, a judgment was entered by the court below finding in substance that the Trust Company occupied the position of trustee to the persons to whom it sold the Wangelin notes and for those persons who received such notes from the Trust Company in exchange for the prior Wilson notes; that the Trust Company was guilty of fraud upon such persons in selling or trading them notes at par, which "it caused to be executed by an irresponsible straw man of its own selection" secured by a mortgage on real estate on which it had been collecting rentals for four years prior to the execution of the Wangelin notes and mortgage, and which gross income from which said real estate at said time was not sufficient to pay the interest on all of said notes, to say nothing of providing funds for payment of taxes, insurance, repairs, and water rentals. The court, likewise, found that the cause of action was not barred by the statute of limitations because of the fiduciary relationship of the Trust Company.

As the result of the sale of the real estate the master in chancery realized only $12,500, and after the filing and approval of the master's report of sale, the court ordered application of the amount in the hands of the receiver pro rata to the holders of the notes secured by the mortgage, and entered judgment in favor of various noteholders, against Wangelin and wife, for the remaining deficiency, but entered judgment specifically in favor of the plaintiffs named in the statement of facts hereinabove, as against the Illinois State

Trust Company, to the extent of the deficiency arising from the sale.

Error is assigned on the judgment of the court entered herein, by which it is sought to impose such obligation for deficiency upon the Trust Company, and it is contended, basically, that there is no proof of the existence of a fiduciary relationship between the Trust Company and any person who purchased notes from the Trust Company, or received them in exchange for other notes at the time of the sale or exchange; and (second) that there is complete lack of any evidence that fraud was perpetrated by the Trust Company. It is also contended that the statute of limitations constitutes a bar to the action against the defendant, and that the repurchase agreement is, likewise, barred by the statute of limitations, as well as being *ultra vires*.

We have examined the record carefully in this cause and must agree that the evidence does not establish the existence of a fiduciary relationship between the noteholders and the Trust Company. Such fiduciary relationship can only be established by showing that confidence was reposed in the Trust Company, and that such confidence was accepted and betrayed (*Rubin v. Midlinsky,* 321 Ill. 436, 440; *Dick v. Albers,* 243 Ill. 231, 236; *Bordner v. Kelso,* 293 Ill. 175, 179). It has been clearly noted in the cases determined in this State that it is not sufficient merely to establish a relationship under any particular name or designation such as "Trust Company," trustee, or beneficiary, but it must be shown that confidence actually exists and is reposed by one party and accepted by the other before a fiduciary relationship is established (*Higgins v. Chicago Title & Trust Co.,* 312 Ill. 11; *Guffey v. Washburn,* 382 Ill. 376, 381).

Under the pleadings in this cause it was necessary that there be proof of facts constituting fraud. Fraud is not presumed but the facts constituting the fraud must be alleged and proved (*Ashton v. MacQueen,* 361 Ill. 132, 143; *Anderson v. Anderson,* 339 Ill. 400, 411;

*Simpson v. Adkins,* 311 Ill. App. 543, 551). There is a complete lack of any evidence in the record that a fraud was perpetrated by the Trust Company, other than such as might arise from an interpretation of the facts recited in this opinion. Only two of the noteholders testified (Young and Popkess), and that is the only evidence concerning the sales of notes by the Trust Company. There is in that testimony an obvious failure to establish fraud and there is no mention of any misrepresentation of fact which could constitute fraud. In the absence of any testimony on the subject it cannot be presumed from the facts detailed herein, that the defendant was guilty of fraud. As stated in *Racine Fuel Co. v. Rawlins,* 377 Ill. 375, 379, "The Rule is that transactions are presumed to be fair and honest, until the contrary is proved by clear and convincing evidence. . . . Fraud is not presumed, but must be proved like any other fact, by clear and convincing evidence. . . . It is not sufficient that there be mere suspicion of fraud, but fraud, if it exists, must be satisfactorily shown." The burden is on plaintiffs alleging fraud to prove such allegation by a preponderance of the evidence (*American Hoist & Derrick Co. v. Hall,* 208 Ill. 597, 601).

Under the facts in this case there is nothing to show that the Trust Company occupied the position of trustee for the noteholders, since at the time of the sale and exchange of the notes, the parties were not even acquainted so far as the record discloses, and there was no oral or documentary evidence which could create any relationship which could reasonably be determined as "fiduciary." There is no evidence of any prior course of dealings by any noteholder with the Trust Company, or that any noteholder ever had any relationship with the Trust Company, or reposed any confidence in it previously.

So far as the record discloses the properties had been substantial producers of income prior to 1931, and the master's finding in connection with the issue of

fraud and the questions of value were clearly sustained by the evidence. It is apparent that the economic depression, of which the courts have taken judicial notice (*Klee v. Chicago Trust Co.*, 365 Ill. 354, 356) could not, in the words of the master, "have been fairly foretold by the Trust Company." We cannot sanction the finding of fraud based upon decline in valuation or rentals as the result of the depression, on the state of the record before us, and it is apparent that there was nothing in the testimony of Young and Popkess which would, even as to such plaintiffs, sanction a finding of fraud so as to justify a deficiency decree as against the Trust Company. (As to such individuals, it is obvious that any repurchase agreement was barred by the statute of limitations, although there is no finding or decree, based upon such agreement or issue, in the record.) It is unnecessary, however, to discuss the application of the statute of limitations to the case as a whole, in view of the conclusion of this court that the record fails to justify a deficiency decree based upon fraud. Similarly, it is unnecessary to discuss the contention that a repurchase agreement was *ultra vires*. It should be noted in passing, however, that the master in chancery made a finding that the beneficial ownership in the real estate was at all times in Bertie Wilson. This conclusion is sustained by the evidence and so far as the record discloses, was not questioned by the court below, or the parties to this proceeding. In this connection it is contended by plaintiffs that the case of *Bride v. Stormer*, 368 Ill. 524, constitutes an exact precedent justifying the judgments entered herein. In that case, however, the bank was the sole beneficial owner of the real estate and procured the execution, on behalf of the bank, of a trust deed thereon. The title was taken in the name of an assistant cashier, who subsequently executed a mortgage at the request of the bank. On foreclosure of such second mortgage, after the bank's

insolvency, the receiver, as a defendant, was subjected to a deficiency decree on the ground that the title was in the bank on a resulting trust. In the case before us, where the beneficial interest in the property involved remained at all times in Bertie Wilson, it is apparent that the circumstances involved in the case cited and in the case before us, are not parallel.

We are impelled to conclude, therefore, that the findings of the trial court in the decree entered on July 14, 1941, and upon which judgment was entered on June 25, 1943, in which judgment was entered against defendant, Illinois State Trust Company, have no support in the evidence, in view of the fact that the record fails to disclose that any fiduciary relationship existed between the Trust Company and any of the plaintiffs, or that there was any fraud shown in the facts, as disclosed by the record, in the sale or exchange of any of the notes by the Trust Company.

The judgment of the circuit court, entered on June 25, 1943, in favor of the plaintiffs as herein stated, and as against the defendant, Illinois State Trust Company, will, therefore, be reversed and judgment will be entered here in favor of the defendant and in bar of such claims of plaintiffs, without prejudice in any manner to any rights of plaintiffs in and to deficiency judgments rendered against parties other than defendant, Illinois State Trust Company.

*Judgment reversed.*