(No. 27998.—

DOROTHY A. NAAS, Appellee, *vs.* ROSE B. PETERS *et al.*— (WALTER T. PETERS, Admr., Appellant.)

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 15, 1945.*

MURPHY & DIERINGER, of Chicago, for appellant.

SAMUEL J. ANDALMAN, of Chicago, for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This suit arises out of an action in the superior court of Cook county to foreclose a mortgage in which Rose B.

Peters and Lester B. Peters were the principal defendants. A deficiency decree in the amount of $3834.45 was entered against both of said defendants, but an appeal was taken to the Appellate Court by Rose B. Peters, only. The Appellate Court affirmed the deficiency decree, (321 Ill. App. 212,) leave to appeal was granted by this court, and the appellant now seeks to reverse that judgment and the decree.

The facts are not in dispute and show that the plaintiff, Dorothy A. Naas, owned some vacant lots in Niles, Illinois, which, on December 31, 1934, she conveyed to Lester B. Peters for the sum of $20,000. Six thousand dollars in cash was paid upon the purchase price, and on the same day Lester B. Peters, alone, executed notes for $14,000 covering the balance of the purchase price and conveyed the property by trust deed to secure the payment of the said balance. On the same day, following the above transaction, Lester B. Peters delivered to his mother, Rose B. Peters, a quitclaim deed to the premises which, however, was not recorded by her until April 6, 1940. Subsequently, a number of payments were made on the indebtedness by Lester B. Peters with money furnished by his mother, amounting to approximately $4000, but on June 30, 1941, default was made and a suit filed to foreclose the lien of the trust deed for the amount remaining due and unpaid.

In the trial court, the case was referred to a master in chancery where evidence was taken which showed that Lester B. Peters had no money and that the property was purchased by him as the agent of his mother; that title was taken in his name, but that his mother furnished all the money and he took title and executed the notes and the trust deed as a matter of convenience for her.

An examination of the pleadings shows that in the amended complaint it was alleged that, in the making of the sale and the execution of the papers, Lester B. Peters was merely acting as an agent for Rose B. Peters, who was

the undisclosed principal. There was nothing alleged concerning a resulting trust at any place in the complaint.

On the hearing before the master, it was found that, in case there was a deficiency on the sale, Lester B. Peters should be liable for the same, but that Rose B. Peters should not be held liable for any such deficiency. The trial court approved the master's report, but reserved the question of who was responsible for a deficiency, if any, until after the sale. In its final order, the circuit court held both Lester B. Peters and Rose B. Peters liable for the amount of the deficiency.

The Appellate Court held that, under these circumstances, when the title to the property was conveyed to Lester B. Peters a resulting trust was created, the mother being the real owner of the property, and that she was liable for the deficiency, relying entirely on the case of *Bride* v. *Stormer*, 368 Ill. 524.

The appellant contends there was no resulting trust in the case; that a *cestui que trust* is not liable for negotiable paper or a contract signed under seal by her trustee; that an undisclosed principal whose name does not appear on the negotiable instrument is not liable for the same; that a deficiency decree can only be entered against a person personally liable for the mortgage indebtedness and that a decree must be based on the allegations set forth in the pleadings. The appellee in this case relies almost exclusively upon the case of *Bride* v. *Stormer*, 368 Ill. 524, to sustain the decree of the trial court against appellant. We think that case is quite dissimilar to the present one. In *Bride* v. *Stormer*, the facts show that Stormer was an employee of the Denhart bank for many years. In 1919, one Harland owned certain land and obtained a mortgage loan of $9000 on said land from the bank. The loan was expressed in two notes, one for $5000 and one for $4000 which the bank, in turn sold to customers. In 1923, the bank, through its trustee, foreclosed upon said mortgage

and, after sale, a master's deed was issued to Stormer in 1925. Stormer testified that he knew nothing about the title being placed in his name at that time. The bank paid the two notes of $5000 and $4000, respectively, to its customers. March 5, 1925, Stormer, having become aware that he held the title, at the request of the bank, executed a trust deed and mortgage notes for $12,000. These notes were sold by the bank to its customers and the bank, alone, received and retained the money. The bank had exclusive control over these securities and the minutes of the directors' meetings showed that the trust deed and notes were referred to as improving the bank's condition. In the meantime, the Denhart bank had become organized as a State bank and at the time of the litigation was in the hands of a receiver. That case was taken to the Appellate Court and there decided upon the provisions of the Negotiable Instruments Act and it was held that, inasmuch as the bank had not signed the notes or trust deed, the Negotiable Instruments Act was a complete bar against holding the bank liable for the deficiency. In the Supreme Court, it was held that the bank was bound to pay under the common counts for money had and received, on the theory that the bank, having sold the notes to a confiding public, could not be permitted to receive and retain money without being held accountable for it.

In that case there was a controversy between the receiver of the bank and three of the stockholders as to who were the real parties in interest in making the loan. This court expressly held on that point as follows: "The bank got and retained the money paid to it for notes, and, in equity, it is bound to pay whatever remains unpaid thereon after the sale of the mortgaged land. It cannot set up its claim that there may have been an *ultra vires* act committed when it procured Stormer to execute the trust deed and notes to defeat the right of the appellants to collect the money due them on notes they purchased from the

bank." In that case it was not the act of Stormer in placing the title in his name. He was not a designated agent and every affirmative act in the transaction was the act of the bank itself. Stormer set up, in his own behalf, a resulting trust and proved the same before the master, and the court further held: "There was unquestionably a resulting trust created the instant Stormer received title to this land, and since the proof is that the bank's money was used in payment when Henry Denhart surrendered the certificate of indebtedness and receipted the master, it, and not the individual stockholders, was the person beneficially interested."

In the present case, there could be no judgment founded on the theory of money had and received, because Rose B. Peters did not sell anything to innocent third parties who relied on her to make good, but, on the contrary, she paid in something over $10,000 on the purchase price of the property. The deed which was given to Rose B. Peters on the day of the transaction, December 31, 1934, was held by the said Rose B. Peters and recorded on April 6, 1940. In the original transaction, the proofs do not show the name of Rose B. Peters to have been ever mentioned, nor did she in any manner ever assume the payment of the mortgage.

The testimony does not disclose that the appellee had any knowledge that Rose B. Peters held title under the unrecorded deed from December 31, 1934, until the last-named date in 1940. Lester B. Peters does not seek to avoid personal liability for the deficiency decree and neither he nor his mother, Rose B. Peters, have ever sought or claimed a resulting trust. We believe the facts in this case show conclusively that Lester B. Peters acted merely as the agent for his mother and that she was the undisclosed principal.

Section 18 of the Negotiable Instruments Act (Ill. Rev. Stat. 1943, chap. 98, par. 38,) provides as follows:

"No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." The exceptions referred to in noway apply to the case at hand and thus it must be accepted that no suit at law could have been maintained upon the notes in controversy against Rose B. Peters in view of that statute, and there is no rule of law which will subject her to personal liability under the notes or trust deed unless she had expressly agreed to pay the same or had conducted negotiations as in *Bride* v. *Stormer,* 368 Ill. 524. There appears to be no such agreement or conduct on her part in this case and thus no personal decree for the deficiency should have been entered against her. The rule of *Bride* v. *Stormer,* 368 Ill. 524, has possible far-reaching effects and should only be applied when the unquestioned facts are identical or entirely comparable from a legal standpoint.

This conclusion is also fortified by section 16 of our Mortgage Act, (Ill. Rev. Stat. 1943, chap. 95, par. 17,) which provides that execution on a deficiency decree shall be issued only against one "personally liable for the mortgage debt." Thus, in *Conerty* v. *Richtsteig,* 379 Ill. 360, a deficiency decree was denied against certain parties who had become relieved of their note obligation because not included in an agreement for extension of a mortgage outstanding against property purchased by them. In principle, this court long ago adopted a similar rule in *Walsh* v. *Murphy,* 167 Ill. 228, where it was held that a wife can not be bound as an undisclosed principal by a contract under seal executed by her husband as principal even though the contract resulted in a benefit to the wife. In the opinion by Justice Cartwright, this court said: "The rule in regard to instruments under seal made by an agent is, that in order to bind the principal and to make it his contract, it must purport on its face to be his. An agent cannot ordinarily bind the principal by a sealed contract executed in his name, nor can the principal ordinarily avail

himself of such a contract and sue the other contracting party thereon. An undisclosed principal whose authorized agent has made such a contract in his behalf can neither sue nor be sued on it."

Because of the particular facts shown in the case of *Bride* v. *Stormer,* 368 Ill. 524, we believe it was proved to be an exception to the above rule and it is inapplicable on the record shown in the present case.

It is our judgment, therefore, that the decree finding Rose B. Peters liable for the deficiency and the judgment of the Appellate Court affirming that decree are in error and the said decree and judgment are reversed.

*Judgment and decree reversed.*