(No. 34914.— ■)

THE CITY OF ALTON, Appellee, *vs.* THE COUNTY COURT OF ST. CHARLES COUNTY, MISSOURI, *et al.,* Appellees. —(THE STATE OF MISSOURI *et al.,* Appellants.)

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

24

JOHN M. DALTON, Attorney General, and ROBERT L. HYDER, both of Jefferson City, Missouri, HAROLD G. TALLEY, and RONALD C. MOTTAZ, both of Alton, for appellants.

JOHN W. HOEFERT, Corporation Counsel, of Alton, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal by the State of Missouri and the State Highway Commission of Missouri from a decree of the city court of the city of Alton. The decree discharged the receiver of the Clark Bridge which crosses the Mississippi River from Alton, Illinois, to St. Charles County, Missouri, and approved his final report. On this direct appeal the appellants, who were not parties to the action in the trial court, seek to challenge certain orders relating to the payment of attorney's fees by the receiver. In our disposition of the case we reach only procedural problems that relate to the propriety of this appeal. A statement of the relevant facts is necessary to an understanding of those problems.

The bridge was originally constructed by a private individual as a toll bridge under the authority of an act of Congress. (Pub. Law 274, H.R. 10090, 69th Cong., 1st Sess., 44 Stat. 620, as amended by Pub. Law 679, H.R. 16778, 69th Cong., 2nd Sess., 44 Stat. 1270.) That act recognized that the bridge might be acquired by a govern-

mental unit. It provided that upon payment of the bonds issued by the governmental unit to finance the cost of acquisition, the bridge "shall thereafter be maintained and operated free of tolls or the rates of toll shall thereafter be so adjusted as to provide a fund of not to exceed the amount necessary for the proper care, repair, maintenance and operation of the bridge and its approaches." 44 Stat. at 621.

St. Charles County, Missouri, became the owner of the bridge through foreclosure proceedings in 1936. By January 1, 1950, all but $25,000 of the bonds that had been issued by the county to pay the cost of acquiring the bridge had been retired from the proceeds of tolls collected from those who used the bridge. Those bonds were allowed to remain outstanding, and by May 16, 1952, the county had on hand an accumulated surplus of $400,000 in toll revenue. It then entered into an agreement with the State Highway Commission of Missouri which provided that the county would continue to collect tolls for use of the Clark Bridge until June 30, 1956, that the State Highway Commission would construct a new highway approach on the Missouri side of the bridge, that the county would pay to the commission all net toll revenues plus the $400,000 on hand until this project had been paid for, and that on June 30, 1956, the county would redeem and retire the $25,000 in outstanding bonds and transfer the bridge and any net toll revenues remaining to the State Highway Commission. The basic dispute arises from the use made by St. Charles County of more than $3,000,000 of toll revenues collected after January 1, 1950. Most of this money was spent for the construction of highway facilities in St. Charles County and for the purchase of real estate and erection of an office building in Alton.

In June of 1956 St. Charles County announced its intention to discontinue the collection of tolls and to transfer the bridge to the State Highway Commission of Missouri.

The city of Alton then filed its complaint in this case. The complaint alleged that the application by St. Charles County of over $2,000,000 of toll revenues to highway construction and to the repair and improvement of the approaches to the bridge on the Missouri side of the river, without any comparable disbursement for the improvement of the bridge approaches in the city of Alton, constituted a fraud on the taxpayers of the city of Alton. It sought an injunction restraining St. Charles County from conveying that portion of the bridge located in the city of Alton and the appointment of a receiver to collect tolls in order to insure that the bridge approaches in the city of Alton would likewise be repaired and improved from toll revenue.

Proper service of process was made on St. Charles County. It failed to appear, and on June 29, 1956, an injunction was issued, restraining it from conveying that portion of the bridge located in the city of Alton. Paul W. Davey was appointed receiver, and was ordered to begin collection of tolls at the Alton toll station. Anthony W. Daly, Schaefer O'Neill and Emerson Baetz were appointed attorneys for the receiver.

On July 2, 1956, St. Charles County conveyed the Clark Bridge and its approaches to "the State of Missouri acting by and through the State Highway Commission of Missouri." Shortly thereafter the State of Missouri filed actions for injunctive relief against the receiver and the judge of the city court of Alton in the United States District Court for the Southern District of Illinois. Subsequently it dismissed these actions upon its own motion. It then initiated an original action in the Supreme Court of the United States but its motion for leave to file a complaint for an injunction was denied. (*Missouri v. Davey,* 352 U.S. 886, 1 L. ed. 83.) Emerson Baetz and Anthony W. Daly defended these suits.

The city court of Alton adjudged St. Charles County to be in default, heard evidence presented on behalf of

the city of Alton, and on August 10, 1956, entered a decree *pro confesso*. The decree found that the application of toll revenue by St. Charles County for improvement of the Missouri approaches to the Clark Bridge without improving the approaches on the Alton side was "a constructive fraud upon the plaintiff The City of Alton and the citizens and taxpayers of the City of Alton and the State of Illinois." The decree continued the original injunction and the receivership until such time as the court might approve a plan to improve the Clark Bridge and its approaches or to construct new approaches.

On January 10, 1957, Missouri filed its limited appearance in the city court of Alton and suggested that the court lacked jurisdiction in the principal case. This suggestion was rejected. Thereafter the State of Missouri and Karl K. Hoagland, a user of the bridge, initiated an original *mandamus* action in this court to compel the city court of Alton to expunge its orders. We found that the city court of Alton had jurisdiction of the parties and of the subject matter, and denied the writ. (*People ex rel. Hoagland* v. *Streeper*, 12 Ill.2d 204.) Messrs. Baetz and Daly participated in the defense of this action.

On December 3, 1957, Rolla J. Mottaz and Francis M. Karr of Alton were granted permission by the city court of Alton to intervene for the purpose of suggesting a plan to end the receivership. They were represented by Roland C. Mottaz and Harold G. Talley, who appear in this case as special counsel for the present appellants. Hearings were had upon various suggestions with respect to the termination of the receivership, and on December 7, 1957, the court entered an order suspending the collection of tolls. Thereafter the State Highway Commission of Missouri and the Department of Public Works and Buildings of Illinois executed a "preliminary agreement" whereby the former agreed to convey to Illinois that portion of the Clark Bridge located in the State of Illinois, and Illinois

agreed to undertake the repair and maintenance of that portion. It was further agreed that all funds remaining in the hands of the receiver, amounting to approximately $370,000, were to be paid to the Department of Public Works and Buildings of Illinois and deposited in the Road Fund, and that other funds, amounting to approximately $200,000, theretofore received by Missouri from St. Charles County should be retained by Missouri and disbursed in accordance with the final agreement to be entered into. The State Highway Commission of Missouri agreed to release the city of Alton from any liability "arising out of the seizure" of the bridge.

An order was entered on April 1, 1958, dissolving the injunction and terminating the receivership. On April 23, 1958, the final report of the receiver was approved and he was discharged. The court found that the State Highway Commission of Missouri had (1) assumed physical control of the bridge pursuant to the decree of April 1, 1958, (2) executed a release of liability to the city of Alton and delivered it to the clerk of the court, (3) executed a receipt to the receiver acknowleding the return of personal property, and (4) removed the toll house from the Alton side of the river and was in process of entering into a final agreement with Illinois with respect to the ownership of the bridge. The decree also found that the receiver had transferred the funds in his possession to the Department of Public Works and Buildings of Illinois.

A motion by the city of Alton to dismiss the appeal has been taken with the case. This appeal is unique in many ways. It is taken by the State of Missouri and its State Highway Commission, who were not parties below, and who actively sought, in this court and in the Federal courts, to prevent the exercise of jurisdiction by the trial court. Even in their notice of appeal they purport to waive sovereign immunity only for the purpose "of appeal and review." The appeal is limited to an attack upon the orders

that allowed attorneys' fees to Anthony W. Daly and Emerson Baetz. Those orders were appealable when they were entered. (*People ex rel. Russel* v. *Illinois State Bank of Crete,* 312 Ill. 613.) The most recent of them was entered on November 14, 1957, and the notice of appeal was not filed until April 24, 1958. The normal time for appeals from those orders had expired before the notice of appeal was filed. (See Ill. Rev. Stat. 1957, chap. 110, par. 76.) Moreover it appears from the record that the appellants have accepted benefits under the final decree from which this appeal is taken.

The appellants contend that their appeal is authorized by section 74 of the Civil Practice Act, which provides: "The right heretofore possessed by any person not a party to the record to review a judgment or decree by writ of error is preserved by notice of appeal." (Ill. Rev. Stat. 1957, chap. 110, par. 74.) Prior to the enactment of the Civil Practice Act in 1933, one who was not a party to an action had no right of statutory appeal. (*Louisville, Evansville and St. Louis Consolidated R. R. Co.* v. *Surwald,* 147 Ill. 194; *People ex rel. Galloway* v. *Franklin County Building Ass'n,* 329 Ill. 582.) He could, however, prosecute a writ of error by a showing that he was a privy to the record or would be injured by the judgment, order or decree which he sought to have reviewed or that he would benefit by its reversal. *Anderson* v. *Steger,* 173 Ill. 112; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.

We pass the interesting problems that arise from the efforts of the appellants to avoid the exercise of jurisdiction by the trial court, (cf.*Georgia* v. *Jesup,* 106 U.S. 458, 27 L. ed. 216; *South Carolina* v. *Wesley,* 155 U.S. 542, 39 L. ed. 254,) and from the fact that the issues now sought to be raised were not presented to the trial court, (*Lenhart* v. *Miller,* 375 Ill. 346,) as well as the undetermined question of the right, under section 74, to a belated review of orders that were final when entered. (Cf. *Bride*

v. *Stormer,* 368 Ill. 524, in which nonfinal orders were reviewed under that section.) Nor do we consider the effect of the appellants' acceptance of benefits under the decree.

It is unnecessary to dispose of these questions because the record fails to show that the appellants have any interest in the orders which they seek to have reversed. The interest that will justify an appeal by one who is not a party must by direct, immediate and substantial. (*Leland* v. *Leland,* 319 Ill. 426; *Gibbons* v. *Cannaven,* 393 Ill. 376.) They contend that they have such an interest on the ground that Missouri will benefit financially if the receiver is required to restore the amounts that the court authorized him to disburse for legal services, because its obligations under its agreement with Illinois would be *pro tanto* reduced.

This contention is unsound. The agreement recites that the parties to it "are anxious of operating the said bridge toll free for the mutual benefit of the parties hereto and the welfare and convenience of the public, and of providing for the immediate repair and future maintenance of said bridge and appurtenant structures under a joint and equitable arrangement." Its pertinent provisions are:

"It is further mutually agreed and understood that all funds remaining in the receivership of the cause styled, City of Alton, Illinois, v. St. Charles County Court and others (Case #7184 City Court of Alton, Illinois) be paid to the Department of Public Works and Buildings of the State of Illinois, and deposited in the Road Fund, said amount now approximating $370,000.

"It is further agreed and understood that certain other funds heretofore received by 'Missouri' from the County Court of St. Charles County, Missouri, will be retained by 'Missouri' to be applied and disbursed in accordance with the terms of an agreement to be entered into between 'Illinois' and 'Missouri' for the repair and maintenance of the said bridge and approaches, pursuant to Sections 191b and 191c, Chapter 121 aforesaid, and pertinent Missouri statutes.

"It is further understood and agreed between 'Illinois' and 'Missouri' that the said proposed agreement to be entered into will

provide that any balance remaining after the provisions of said Section 191b, Chapter 121, and pertinent Missouri statutes have been complied with, shall be used by the respective parties for maintenance of that portion of the bridge over which it has jurisdiction, or may be used, in the discretion of the parties, for the construction or reconstruction of the approaches to said bridge. It is further agreed and understood that the said proposed agreement shall provide that a record of the costs of all construction, reconstruction, repair, maintenance, and traffic assistance, or any other work on the bridge proper performed by, or under the supervision of, and paid by either party for which any reimbursement shall be claimed from the other party shall be kept and be available at all reasonable times for the inspection of either party.

"Said proposed agreement shall also provide that annually or semi-annually, as agreed, an accounting shall be had of the amounts disbursed by the respective parties and an equal adjustment of the costs so incurred shall be made.

" 'Illinois' states that it will, as soon as reasonably possible, improve or reconstruct the Illinois approach to the said Clark Bridge in such manner and to such an extent as 'Illinois' may determine to be reasonably necessary for the expeditious movement of traffic over said approach."

The agreement distinguishes between "the bridge proper" and the approaches to the bridge. It provides that costs incurred in connection with "the bridge proper" are to be the joint responsibility of the contracting parties on a reimbursable basis. The funds remaining in the receivership which were paid into the Road Fund of Illinois are not required to be spent on "the bridge proper" but, as the agreement states, they may be used "for the construction or reconstruction of the approaches of said bridge." Neither of the contracting parties has undertaken to be responsible for the cost of the approaches to the bridge in the other State. Missouri therefore has no direct interest in any funds that have been or may be turned over to Illinois by the receiver.

The motion to dismiss the appeal is allowed.

*Appeal dismissed.*